# RIDDLE *v.* WHITEHILL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 314. Submitted May 1, 1890. — Decided May 19, 1890.

The right of one partner to have the affairs of the firm wound up at once, upon the assignment by the other partner before the expiration of the term of all his property for the benefit of his creditors, is subject to modification according to circumstances.

When one of two partners purchases real estate with partnership funds, but takes title in his own name, and takes possession, his possession is the possession of both, and a trust results in favor of his partner.

Statutes of limitation do not run against a *cestui que trust* where the trust is express and clearly established; but when the trustee openly disavows it, and sets up adverse title in himself, time begins to run.

Where partnership affairs are being wound up in due course, without antagonism between the parties, or cause for judicial interference; assets are being realized and debts extinguished; and no settlement has been made between the partners; the statute of limitations has not begun to run.

When the right of action accrues between partners after a dissolution of the partnership, so as to set the statute of limitations in motion, depends upon the circumstances of each case, and cannot be held as matter of law to arise at the date of the dissolution, or to be carried back by relation to that date.

ON the 10th day of March, 1885, George R. Riddle and Wilson S. Packer as trustee for Electra Packer, filed their bill of complaint in the Circuit Court of the United States for the Eastern Dist˙ct of Arkansas against Joseph M. Whitehill, alleging that on the 7th day of March, 1870, and for more than twenty

years prior thereto, the complainants and one T. J. Coleman, deceased, were partners in business under the firm style of Riddle, Coleman & Co., with their principal office at the city of Pittsburgh, in the State of Pennsylvania, engaged in dealing in coal, purchasing and transporting the same to the markets on the lower Mississippi River and elsewhere, and selling the same for a profit; that on said 7th day of March, 1870, said firm of Riddle, Coleman & Co. entered into an agreement with the defendant, Joseph M. Whitehill, as follows:

"Memorandum of articles of agreement between J. M. Whitehill, of the first part, and Riddle, Coleman and Co., of the second part, as follows:

"They agree to start a coal depot at Island Eighty-two in copartnership, and the said Whitehill agrees on his part to give his whole attention to the management at the coal yard, and the said Riddle, Coleman and Co. on their part are to furnish coal, capital, or credit to start the yard and charge no interest for the extra capital, in lieu of the said Whitehill's services at the depot. The said Whitehill is entitled to one-half the profits or losses, and the said Riddle, Coleman and Co. the other half, to be allowed about Vicksburg and New Orleans prices for the coal delivered at the island. It is also agreed that the business shall be carried on under the name and style of J. M. Whitehill and Co., and the partnership is exclusively for the purpose of selling coal by retail and no other, and to continue for five years, providing the firm of Riddle, Coleman and Co. wish to continue in the coal business, but if they want to stop the coal business or wish to draw out of the business at Eighty-two, the firm of J. M. Whitehill and Co. is to wind up their affairs and sell the stock to the best advantage for all parties concerned.

"This the 7th day of March, A.D. 1870.

"J. M. WHITEHILL,

"RIDDLE, COLEMAN & Co."

That in accordance with said agreement, Riddle, Coleman & Co. furnished to said firm of J. M. Whitehill & Co. a com-.

plete plant and outfit with which to start a coal yard and depot for the retailing of coal at Island Eighty-two, consisting, in part, of a wharf boat, with rooms for office, for residence of Whitehill's family, quarters for the crew and employés of the firm; box boats or flats for measuring out and selling coal from boxes; shovels, chains, lines, barrows, anchors, etc., and also coal in barges and coal boats; insured the same, and also furnished additional plant and stock from time to time, as needed for said business; and Whitehill & Co. established a depot and coal fleet at Island Eighty-two, and carried on the business of a retail dealer in coal for about the space of two years at that point, and with the knowledge and consent of Riddle, Coleman & Co. started a retail store there, partly for the purpose of supplying their labor and partly for profit, carried on with the capital of Riddle, Coleman & Co., and for the profit of J. M. Whitehill & Co.; that in the latter part of the year 1871, or early in 1872, to induce the firm of J. M. Whitehill & Co. to change and remove their place of business, depot and coal fleet from Island Eighty-two to Arkansas City, the proprietors of the last-mentioned place leased to that firm, free of rent, the landing and coaling privileges at Arkansas City for a term of years, and donated to them certain town lots in said town; and, with the knowledge and approbation of Riddle, Coleman & Co., the firm of J. M. Whitehill & Co. changed, during the year 1872, the location of their business from Island Eighty-two to Arkansas City, and their fleet, barges, boats, and all their outfit were moved by one of the tow-boats of Riddle, Coleman & Co. from Island Eighty-two to Arkansas City; and from that time until October, 1877. and afterwards, J. M. Whitehill & Co. carried on the busines, as dealers in coal at Arkansas City, and also kept a general store, and did a general merchandising business at that place; that in addition to the landing and coaling privilege and the lots donated to said firm by the proprietors of said town, as an inducement to said firm to locate their business at that point, the said J. M. Whitehill, for the use of the firm, purchased a large number of other town lots in the town and paid for the same with the money of the firm, and in like manner acquired

and purchased an undivided half interest in the entire river front of the town for a distance of about three thousand feet, and leased the other half interest in the river front for a period of twenty-five years from the 1st day of May, 1872, and paid for the same out of the money and with the property of the firm, and expended large sums of the money of the firm in building residence houses, store-houses, warehouses, high water platform, a large and expensive ice-house, a hotel, and other valuable improvements on the lots and lands so donated to and purchased with the money and property of said firm, and certain lots are enumerated as having been conveyed as an inducement to locate at said town.

The bill further averred that the river front was leased to the firm on the 1st day of May, 1872, for five years, and this was subsequently extended for the additional term of twenty years from the 1st day of May, 1877; that on the 21st of July, 1875, an undivided half of the river front was sold and conveyed to the firm; that the deeds to some of the land and town lots were taken in the name of J. M. Whitehill & Co., and the deeds to other parts of the land and town lots were taken in the name of J. M. Whitehill, but complainants charge that all the land and town lots not donated to the firm were purchased with its money and for its benefit and held as partnership assets of the firm; that the business of the firm of J. M. Whitehill & Co. was very profitable, and large profits were realized therefrom, all of which, and much of the capital furnished by Riddle, Coleman & Co., were used in the purchase and improvement of the lots and river front, and J. M. Whitehill & Co. became largely indebted to said Riddle, Coleman & Co. for plant and stock furnished by them.

It was further alleged that Riddle, Coleman & Co. became embarrassed and were forced to suspend business, and on the 15th day of October, 1877, made an assignment to James Lynn, as assignee, under the laws of the State of Pennsylvania, of all their real and personal property, including the indebtedness to them from J. M. Whitehill & Co., and all their interest in the business, profits and property of said J. M. Whitehill & Co., of every description, to be collected or sold and disposed

of for the benefit of their creditors; that T. J. Coleman, a member of the firm of Riddle, Coleman & Co., died in the year 1878; that the surviving members of that firm, to wit, the complainants in this cause, devoted themselves, with the aid of the assignee, to realize on the assets of the firm, and after several years' attention to that object, and the application of their individual means to the payment of the debts of the firm, they succeeded in settling up and discharging the debts, and upon a public sale, made in virtue of the powers contained in the deed of assignment, with the express assent of their creditors, all the uncollected assets of the firm, including the indebtedness of the defendant, J. M. Whitehill, and the firm of J. M. Whitehill & Co., were assigned and conveyed by said assignee to W. S. Packer, as trustee for Electra Packer, and George Riddle, by deed dated the 3d day of January, 1885, a copy of which was attached.

Complainants averred that no part of the indebtedness of J. M. Whitehill or J. M. Whitehill & Co., and no part of the assets of said J. M. Whitehill & Co., was ever paid to or collected by the said assignee, and the same and the right to sue for and collect the same is now vested in the complainants, who are also the sole surviving partners of said firm of Riddle, Coleman & Co.; that at the time of the assignment, the 15th day of October, 1877, the firm of J. M. Whitehill & Co. was indebted to the firm of Riddle, Coleman & Co. in the sum of $10,000 for plant, stock, boats, barges, flats, ferry-boats, tugs, anchors, etc., etc., and for coal furnished and supplied to J. M. Whitehill & Co. by Riddle, Coleman & Co.; that Riddle, Coleman & Co. were entitled to one-half of the profits realized by said firm, and also entitled to one-half of the assets of the firm of J. M. Whitehill & Co., which amounted in part to over $65,000, given in various items; that defendant Whitehill published a dissolution of the firm, and took and retained possession of all its assets, and on the 10th day of March, 1881, sold and delivered to Brown, Jones & Co. a part of the property of the firm of J. M. Whitehill & Co. for the sum of $16,000, and also leased to Brown, Jones & Co. the coal privilege at the landing for a term of ten years, at the price and

sum of $800 per annum, and has collected and received the same for three or four years, and is now in receipt of the same; that there is on said river front a large and valuable ice-house, warehouses, and other large and valuable improvements erected thereon with the money and for the benefit of J. M. Whitehill & Co., from which defendant Whitehill has collected rents and received the profits since the date of the assignment of Riddle, Coleman & Co.; that Whitehill has carried on the business of a receiving and forwarding merchant and ferryman, by reason of holding the river front, and derived large profits; that he has received annually large sums of money for the rent of houses and a hotel, built with the money of the firm of J. M. Whitehill & Co. and Riddle, Coleman & Co. are entitled to one-half of all these receipts; that defendant Whitehill has sold some of the lots embraced in the conveyances aforesaid and received the money therefor, and has exchanged some of the lots for other property situated in the town, and, as the title was in some instances taken in his own name, the purchasers or grantees of some of the lots may have taken the same for a valuable consideration without notice of the rights of Riddle, Coleman & Co., but defendant Whitehill should be held to account for the proceeds of such lots, to one-half of which complainants are entitled; and that, as complainants charge on information and belief, Whitehill purchased with the money of Whitehill & Co. a plantation, and took the title thereto in the name of his wife and his brother, and ought to be required to account for the same. The bill then prayed that an account be taken of the partnership business of the firm of J. M. Whitehill & Co.; that that firm may be dissolved; that a master may be appointed to state an account of the business and property, and the liabilities of the firm; the indebtedness of J. M. Whitehill & Co. to Riddle, Coleman & Co.; the interest of Riddle, Coleman & Co. in the assets of the business of J. M. Whitehill & Co.; the profits realized by Whitehill from the property and privileges of J. M. Whitehill & Co., etc., etc.; and that at the final hearing complainants may have a decree for the amount due from the defendant, and that the lots and

real estate purchased with the asséts of the firm, remaining undisposed of to *bona fide* holders without notice, be appropriated to the satisfaction of the decree, and a judgment be rendered against the defendant for any balance due complainants on the business of said partnership; and that a receiver be appointed; and for general relief. The bill was verified by one of the complainants.

The defendant Whitehill demurred, and assigned for causes of demurrer:

" First. That said bill, in case the same were true, contains no matter of equity whereon this court can ground any decree or give complainants any relief as against this defendant.

" Second. That it appears by the bill that said James Lynn is a necessary party, inasmuch as it is stated that said Riddle, Coleman & Co. assigned to him all the real and personal property of said firm, and it does not appear that he has disposed of the same, and the bill seeks action in relation thereto.

" Third. That the right of action, if any existed, to sue for the settlement of the partnership matters, accrued at the time of the dissolution of said firm of J. M. Whitehill & Co., on October 15, 1877, and more than seven years next before the institution of this suit, and that the demand is stale and is barred as a cause of action against this defendant.

" Fourth. That it appears from the bill that the creditors of said Riddle, Coleman & Co. were paid before the pretended sale to complainants by said James Lynn, as assignee, on January 3, 1885, and that there is no privity between complainants and this defendant to enable them to call on him for a settlement of said partnership matters."

On the 14th of April, 1886, the court sustained the demurrer, and ordered the bill to be dismissed for want of equity, and complainants prayed an appeal to this court, which was allowed. On the 7th of October, 1886, one of the days of the same term, the complainant moved to set aside the decree dismissing the bill, and for leave to amend the same by inserting therein : That the defendant continued in the possession and control of the assets belonging to the firm of J. M. Whitehill

& Co. for the professed purpose of paying the debts of the firm, representing to the assignee, Lynn, that J. M. Whitehill & Co. were indebted in the sum of $20,000; that he, the defendant, had, in 1879, made arrangements to pay said indebtedness by instalments of $6000 per year, and that he was using the assets of the firm for that purpose; that defendant did not make any adverse claim to the assets belonging to J. M. Whitehill & Co., until long after the sale hereinbefore stated, in 1881; and that, after paying all the debts of J. M. Whitehill & Co., the defendant is indebted to the firm of Riddle, Coleman & Co., and subject to account, as hereinbefore stated. This motion to set aside the decree and for leave to amend was continued on the 23d day of October, 1886, to the next term, at which term the motion was overruled. The transcript of record was filed in this court on the 2d day of April, 1887.

The sections of the statute of limitations of Arkansas referred to are as follows:

" Sec. 4471. No person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his, her or their right to commence, have or maintain such suit, shall have come, fallen or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed. . . ."

" Sec. 4478. The following actions shall be commenced within three years after the cause of action shall accrue, and not after:

" First. All actions founded upon any contract or liability, express or implied, not in writing. . . ."

" Sec. 4483. Actions on promissory notes, and other instruments in writing not under seal, shall be commenced within five years after the cause of action shall accrue, and not afterward."

" Sec. 4488. All actions not included in the foregoing provisions shall be commenced within five years after the cause of action shall have accrued." Dig. Stat. Ark. 1884, p. 886.

*Mr. John Dalzell* for appellants.

*Mr. D. H. Reynolds* for appellee.

The effect of the assignment was to dissolve the partnership of J. M. Whitehill & Co. *Jones* v. *Fletcher,* 42 Arkansas, 462; *Ogden* v. *Arnot,* 29 Hun, 146 ; *Bank* v. *Carrollton Railroad,* 11 Wall. 624.

The allegation in the bill that the business was continued, is in plain contradiction of the legal effect of the assignment, and of the statement of the bill that notice of dissolution was published by Whitehill, and the continuance was impossible from the nature of the business, as the failure of Riddle, Coleman & Co. to supply coal to sell closed the business, and the allegation of continuance must be treated as surplusage, and as not admitted by the demurrer. The contract exhibited with the bill must therefore be held to govern and limit any statement in the bill inconsistent therewith. *Dillon* v. *Barnard,* 21 Wall. 430, 437; *Bonnell* v. *Griswold,* 68 N. Y. 294.

By the assignment of Riddle, Coleman & Co., the assignee acquired only the right of Riddle, Coleman & Co. in the partnership of J. M. Whitehill & Co., that is to say, the right to a share of what might remain after payment of the debts of the firm and the settlement of its accounts. *Bank* v. *Carrollton Railroad,* 11 Wall. 624, 628 ; *Case* v. *Beauregard,* 99 U. S. 119.

After the assignment of Riddle, Coleman & Co. it was the duty of the assignee to act promptly and take charge of and gather up the assets and reduce the same to money and pay the debts of the assignors and turn over to the assignors any surplus, after saving any sum necessary to pay off the debts of J. M. Whitehill & Co., over and above the assets of said firm duly applied. *Raleigh* v. *Griffith,* 37 Arkansas, 150 ; *Teah* v. *Roth,* 39 Arkansas, 66.

The laws of Arkansas and the laws of Pennsylvania contemplate that the assignee shall, within a year after the assignment, convert the assets into money to pay the debts of the assignor, and immediately after the expiration of the year, to

file in court an account current of his business as assignee for settlement. It was the duty of the assignee, if there was anything that might go to Riddle, Coleman & Co. upon settlement of the partnership of Whitehill & Co., to sue for a settlement; and this suit should have been brought within the time given for such assignee to close his trust, viz.: one year.

If any one could maintain this kind of suit, it must be the assignee, as he was invested by the assignment with the rights of the assignors, and it does not appear that he has parted with these rights; for, if as alleged, the debts of Riddle, Coleman & Co. were paid before the pretended sale of January 3, 1885, the assignee had no power to sell, and complainants as purchasers, acquired no rights by the sale and transfer that will authorize them to sue for a settlement of the partnership matters of J. M. Whitehill & Co. without joining with the assignee, and with the legal representatives of T. J. Coleman, deceased.

And if all the right of action in the assignee was barred in January, 1885, he could transfer no right to any one by deed, sale or otherwise. The statute bar destroys the right that once existed, and confers title on claimant in possession. *Meeks* v. *Olpherts*, 100 U. S. 564; *Trimble* v. *Woodhead*, 102 U. S. 647.

It seems to be well settled, that in regard to real estate, the undisturbed possession of the wrong-doer for the time necessary to bar the action vests of itself a good title in the party holding such possession. It would be a curious application of this principle in the present case, which concerns real estate, to hold that this same lapse of time, instead of making good the defendant's title, or acting as a bar to the right to bring suit, transfers that right to another unimpaired by the lapse of time.

The right of action, if any existed, to sue for the settlement of the partnership matters of J. M. Whitehill & Co. accrued at the time of the dissolution of said firm on October 15, 1877, and more than seven years next before the institution of this suit, and therefore the demand is stale and is barred as a cause

of action against the defendant Whitehill, by the statute of limitations of three years, of five years and of seven years.

Constructive trusts and all trusts, save purely equitable or express trusts, are in equity subject to the statute of limitations. A clear distinction is made, recognized and acted on, between parties who are actual trustees of express trusts, and those who are placed in relations of trust and confidence — between actual trustees created by deed, and whose relations can only be established by the deed creating the trust, and such persons as are constructively trustees, and whose relations as trustees may be established by parol proof. As to the actual trustees the statute does not run, and as to constructive trustees it does run. *Adams* v. *Taylor*, 14 Ark. 62; *Baxter* v. *Moses*, 77 Maine, 465; *Knox* v. *Gye*, 4 English Rep. L. R. 5 H. L. 656; *Noyes* v. *Crawley*, 10 Ch. Div. 31; *Speidel* v. *Henrici*, 120 U. S. 377.

Between partners there is not such implied trust as will exclude the operations of the statute of limitations. *Adams* v. *Taylor*, 14 Arkansas, 62; *McClung* v. *Capehart*, 1 N. W. Rep. 123; *Knox* v. *Gye, ubi supra; Noyes* v. *Crawley, ubi supra; Clay* v. *Freeman*, 118 U. S. 97.

Courts of law and courts of equity have concurrent jurisdiction in the matter of accounts, and of accounting in the matters of partnership. *Cochrane* v. *Allen*, 58 N. H. 250; *Knox* v. *Gye, ubi supra; Noyes* v. *Crawley, ubi supra.*

The statute of limitations applies with equal force in courts of law and courts of equity in cases of concurrent jurisdiction (as in this case), courts of equity acting in obedience rather than in analogy to the statutes. *Adams* v. *Taylor*, 14 Arkansas, 62; *Wilson* v. *Anthony*, 19 Arkansas, 16; *Faulkner* v. *Thompson*, 14 Arkansas, 478; *Sullivan* v. *Hadley*, 16 Arkansas, 129; *Ringo* v. *Woodruff*, 43 Arkansas, 469; *Bank of U. S.* v. *Daniel*, 12 Pet. 30, 56; *Godden* v. *Kimmel*, 99 U. S. 201; *Speidel* v. *Henrici, ubi supra; Rhode Island* v. *Massachusetts*, 15 Pet. 233; *Lansdale* v. *Smith*, 106 U. S. 391; *Noyes* v. *Crawley, ubi supra.*

It is submitted that the authorities in Arkansas, in this country and in England, maintain the proposition that the

statute of limitations may be relied on as a defence in a suit between partners or their representatives, for a settlement of the partnership business; and that the Circuit Court did not err in sustaining the demurrer and dismissing the bill for want of equity.

MR. CHIEF JUSTICE FULLER, after stating the case as above reported, delivered the opinion of the court.

Upon the face of the bill, of which the transfer to the complainants formed a part, we think the latter could maintain the suit if a cause of action existed, and we assume that the demurrer was sustained and the bill dismissed as the result of the application of the statute of limitations or the doctrine of laches. Should this conclusion have been reached upon the facts admitted? By the terms of the agreement in question, the partnership was to continue for five years, provided Riddle, Coleman & Co. wished to remain in the coal business; but, if not, or if they desired to terminate this particular connection, J. M. Whitehill & Co. were "to wind up their affairs and sell the stock to the best advantage for all parties concerned." The five years ran out on the 7th day of March, 1875, but the firm went on in business. Many of the lots in question had been conveyed to Whitehill & Co. prior to 1875, and the term of the lease of the river front did not expire until May, 1877, when it was renewed for twenty years, an indication that the firm had then no intention of bringing its business to an end. The management at Arkansas City was confided to Whitehill, while Riddle, Coleman & Co. furnished the capital invested in the plant, and the coal from year to year, dealing in which was the specific object of the enterprise.

On the 15th day of October, 1877, the firm of Riddle, Coleman & Co., which had then been carrying on business at Pittsburg for more than twenty-seven years, was compelled to make an assignment. If a member of an ordinary partnership assigns, where the partnership is at will, the assignment dissolves it, and if it is not at will, the assignment may be treated by the other members of the concern as a cause for dissolu-

tion. The assignee of one partner cannot be made a member of a partnership against the will of the other partners, but the absolute right to have the affairs of the firm at once wound up, when the specified duration of the partnership has not expired, may be subject to modification according to circumstances. *Taft* v. *Buffum*, 14 Pick. 322; *Buford* v. *Neeley*, 2 Devereaux Eq. 48; *Monroe* v. *Hamilton*, 60 Alabama, 226; Lindley on Part. *364; *Helmore* v. *Smith*, 35 Ch. Div. 436. In the case at bar J. M. Whitehill & Co. continued in business after October, 1877, although the bill does not state for how long a time. The failure of Riddle, Coleman & Co. presumably prevented their furnishing coal, yet the averments of the bill show that the business of Whitehill & Co. had expanded far beyond the traffic to which it had been originally confined. But assuming that by the assignment the partnership of J. M. Whitehill & Co. was dissolved, it was the duty of Whitehill to proceed at once to wind up the business and sell the stock to the best advantage, not only for himself, but for Riddle, Coleman & Co., and this was in compliance with the express provisions of the agreement. It appears that a portion of the stock, to the amount of $16,000, was not sold until the 10th day of March, 1881, at which time the coal privilege at the landing was leased for ten years; and while some of the real estate had been disposed of, a large part remained yet to be divided, when the bill was filed. The proposed amendment showed that the firm's liabilities were not liquidated until 1883.

According to the allegations of the bill, on the 15th day of October, 1877, when Riddle, Coleman & Co. assigned, the firm of J. N. Whitehill & Co. was the owner of town lots, of river front, residences, store-houses, and a hotel, bought and paid for with the partnership funds. The title stood in the name either of J. M. Whitehill or of J. M. Whitehill & Co.; and part of the property was in use for partnership purposes and so employed, while a part was not, but represented the investment of partnership gains. A partnership, as such, could not hold the legal title to real estate, as it is not a person in fact or in law, and the situation in this case is well described in

*Percifall* v. *Pratt,* 36 Arkansas, 464, where it was held : " If the title be made to all the partners by name, they hold the legal title as tenants in common, without survivorship. If to one partner alone, the whole legal title vests in him, which is the case, also, where the title is to a partnership name, which, as in this case, expresses the name of one party only, with the addition of ' and company.' If the deed be to a name adopted as the firm style, which includes the name of no party, it passes nothing in law. The same occurs where the deed is to one already dead."

As to this real estate, whether the deeds ran to J. M. Whitehill & Co. or to J. M. Whitehill the latter held the title in trust, and it was so ruled in *McGuire* v. *Ramsey,* 9 Arkansas, 518. It is there said that " where real estate is purchased and paid for with partnership funds, but conveyed to one of the partners alone, a trust results in favor of the other partners ; " and that lapse of time " cannot be allowed in favor of one partner in possession of real estate against the other, for the possession of one is the possession of both."

Lord Redesdale in *Hovenden* v. *Lord Annesley,* 2 Sch. & Lef. 607, 633, laid down the rule, that if the trust be constituted by act of the parties, the possession of the trustee is the possession of the *cestui que trust,* and no length of such possession will bar; but if a party is to be constituted a trustee by the decree of a court of equity, founded on fraud or the like, his possession is adverse, and the statute of limitations will run from the time that the circumstances of the fraud were discovered.

" As a general rule, doubtless," said Mr. Justice Gray, delivering the opinion of the court in *Speidel* v. *Henrici,* 120 U. S. 377, 386, " length of time is no bar to a trust clearly established, and express trusts are not within the statute of limitations, because the possession of the trustee is presumed to be the possession of his *cestui que trust.* But this rule is, in accordance with the reason on which it is founded, and as has been clearly pointed out by Chancellor Kent and Mr. Justice Story, subject to this qualification, that time begins to run against a trust as soon as it is openly disavowed by the trustee, insisting

upon an adverse right and interest which is clearly and un-
equivocally made known to the *cestui que trust ;* as when, for
instance, such transactions take place between the trustee and
the *cestui que trust* as would in case of tenants in common
amount to an ouster of one of them by the other. . . . In
the case of an implied or constructive trust, unless there has
been a fraudulent concealment of the cause of action, lapse of
time is as complete a bar in equity as at law." Courts of
equity sometimes act in obedience to the statute, and some-
times apply it by way of analogy. Where the cause of
action is legal and the statute has barred the remedy at law,
the defence is as complete in equity as at law, but where the
case falls within the proper, peculiar and exclusive jurisdiction
of a court of equity the statute is not necessarily applied.

Real estate purchased with partnership funds for partner-
ship uses, though the title be taken in the name of one part-
ner, is in equity treated as personal property, so far as is
necessary to pay the debts of the partnership and to adjust
the equities of the partners; but the principle of equitable con-
version has no further application. *Clagett* v. *Kilbourne,* 1
Black, U. S. 346, 349; *Shanks* v. *Klein,* 104 U. S. 18; *Allen*
v. *Withrow,* 110 U. S. 119; *Buchan* v. *Sumner,* 2 Barb. Ch.
165; *Collumb* v. *Read,* 24 N. Y. 505. Whitehill here was in
possession for the benefit of the parties lawfully entitled, and
apparently occupied no position adverse to them.

In *Knox* v. *Gye,* L. R. 5 H. L. 656, the effect of the statute
of limitations, 21 Jac. 1, c. 16, providing that all actions of
account and upon the case should be commenced and sued
within six years next after the cause of such action or suit, and
not after, as repeated in the 9th section of the 19th & 20th
Vict. c. 97, with this additional provision, namely, that "no
claim in respect of a matter which arose more than six years
before the commencement of such action or suit shall be en-
forceable by action or suit by reason only of some other mat-
ter or claim comprised in the same account having arisen
within six years next before the commencement of such action
or suit," upon a bill for an account brought by the executor
of a deceased partner against the survivor, more than six

years after the death, was considered. It was held that the matter, namely, the dissolution of the partnership, and, consequently, the possession of the partnership property by the surviving partner, arose more than six years before the commencement of the suit and was barred; that the right of action arose upon the death of the deceased partner, and the cause of action was the possession of the partnership estate by the surviving partner; that where, in the matter of the enforcement of a legal right, a court of common law would, under the provisions of the statute of limitations, refuse the enforcement after the lapse of six years from the accruing of the right of action, a court of equity would, where its power to grant relief was asked for under similar circumstances, adopt the principle of the statute, and decline to grant such relief.

Lords Westbury, Colonsay and Chelmsford concurred in the result, while the Lord Chancellor (Lord Hatherley) dissented. It was held by Lord Westbury that "there is no fiduciary relation between a surviving partner and the representatives of his deceased partner; there are legal obligations between them equally binding on both;" but the Lord Chancellor insisted with emphasis that "there is a fiduciary relation between them. The surviving partner alone having the legal interest in the partnership property, and being alone able to collect it, there arises a right in the representatives of the deceased partner to insist on the surviving partner holding the property, whenever received, subject to the rights of the deceased partner, and he cannot make use of the partnership assets without being liable to an account for them."

We are not prepared to decide that there is a definite rule of law that statutes of limitation commence to run immediately upon the dissolution of a partnership, irrespective of the circumstances of the particular case. Mr. Justice Lindley, in his excellent work on Partnership, says: " So long, indeed, as a partnership is subsisting, and each partner is exercising his rights and enjoying his own property, the statute of limitations has, it is conceived, no application at all; but as soon as the partnership is dissolved, or there is any exclusion of one partner by the others, the case is very different, and the stat-

ūte begins to run." American ed. 1888, * 510. The learned author in his last edition cites *Knox* v. *Gye, supra,* and *Noyes* v. *Crawley,* 10 Ch. Div. 31, in which Vice Chancellor Malins quotes the above language with commendation, and dissents from *Miller* v. *Miller,* L. R. 8 Eq. 499. Where, however, partnership affairs are being wound up in due course, without antagonism between the parties, or cause for judicial interference; where assets are being realized upon and liabilities extinguished, and no settlement has been made, the cause of action has not accrued, and the statute has not begun to run. Of course, where the partnership expires in accordance with its terms, or is dissolved by agreement, each partner as a general rule has an equal right to the possession of the partnership property, and if they cannot agree as to the disposition and division of it, a court of equity will appoint a receiver to collect and apply the effects. Each partner has a right to have the partnership assets applied in liquidation of the partnership debts, and to have the surplus assets divided, and each may insist on a sale, and that nothing shall be done except with a view to wind up the concern. But in case of dissolution by death, surviving partners are invested with the exclusive right of possession and management of the whole partnership property and business, for the purpose of paying the partnership debts and disposing of the effects of the concern for the benefit of themselves and the estate of the deceased. *Emerson* v. *Senter,* 118 U. S. 1. If they go on with the business under the credit, and risking the effects of the firm, and profits result, they will be bound to account for those profits as belonging to the firm, and they are liable to be charged with interest on the funds they use, though no profit, or even a loss, is made. And so, upon dissolution by an assignment, the solvent partners are in equity entitled to hold the effects and property in the way that surviving partners do, and if they continue the business it is at their own peril, in the absence of special provision.

When the right of action accrues, so as to set the statute of limitations in motion, depends, as we have said, upon circumstances, and cannot be held as matter of law to arise at the

date of the dissolution, or to be carried back by relation to that date. *Todd* v. *Rafferty's Administrator*, 30 N. J. Eq. (3 Stewart) 254; *Partridge* v. *Wells*, 30 N. J. Eq. 176 ; *Prentice* v. *Elliott*, 72 Georgia, 154; *Hammond* v. *Hammond*, 20 Georgia, 556; *Massey* v. *Tingle*, 29 Missouri, 437; *McClung* v. *Capehart*, 24 Minnesota, 17 ; *Hendy* v. *March*, 75 California, 566 ; *Foster* v. *Rison*, 17 Grattan, 321 ; *Boggs* v. *Johnson*, 26 W. Va. 821; *Atwater* v. *Fowler*, 1 Edw. Ch. 417. In *Causler* v. *Wharton*, 62 Alabama, 358, the court held that where one partner, by a written agreement with the other, left the partnership assets with him to dispose of, whenever he could do so at a fair price, a continuing trust was thereby created, and the bar of the statute of limitations would not begin to run against the right to an account of the partnership dealings, so long as the party to whom the assets were delivered acted under the trust or admitted that it was still continuing. Under the agreement here, it is obvious that it was Whitehill who was to close up the business at Arkansas City, which had been under his management ; and under the averments of this bill such a trust was created as would not be barred by the statute of limitations until it was repudiated by Whitehill, which attitude on his part there is nothing here to disclose unless his defence to the bill may be construed as such.

In *Adams* v. *Taylor*, 14 Arkansas, 62, it was held that " the relation between copartners does not create such a trust as will exempt a bill for a mere account and settlement from the operation of the statute of limitations, or the analogous bar by lapse of time, or staleness of the demand." That was a case where a partner came into chancery eight years after the dissolution of the partnership, for an account and settlement, and no circumstances of fraud, accident or concealment were alleged to have prevented the settlement after the partnership affairs had been wound up. The question of when the right of action accrued did not arise, nor was that anything more than, as stated by the court, a bill for a mere account and settlement; whereas we have in this case the state of affairs which existed in *McGuire* v. *Ramsey*, 9 Arkansas, 518, where, with respect to real estate paid for with partnership funds, it was

held that the plea of the statute could not be allowed in favor of one partner in possession of such real estate as against the other.

The case of *Chouteau* v. *Barlow*, 110 U. S. 238, is very much in point. Sanford, Chouteau, Sarpy and Sire were copartners in business in St. Louis. During its existence the partnership purchased and paid for with the partnership funds, acre lands and town lots in Wisconsin and Minnesota, and held the same for the benefit of the copartnership. The firm was dissolved in 1852 by the retirement of Sanford, and some twenty-four years thereafter his executor and trustee filed a bill against the representatives of the other members of the firm, who had all died, to compel an accounting touching the property of the partnership and the proceeds of such property. The dispute between the parties was as to the terms of the agreement of dissolution of the partnership in 1852. The complainants alleged that Sanford released to Chouteau all his interest in the estate of the firm, except its lands and town lots in Minnesota, and that Chouteau agreed to relieve Sanford from the debts of the firm and assure to him his proportion of the lands and town lots free from any debt or liability growing out of the copartnership affairs. The answer alleged that Chouteau agreed to relieve Sanford from the debts of the firm, and that Sanford released to Chouteau all his interest in the assets of the firm, including his interest in any of the lands and town lots in Minnesota; and further averred, by way of defence, that more than six years had elapsed since the accruing of any of the alleged causes of action set out in the bill. The opinion of the court thus concludes: " On the whole case, we are of opinion, that, after the dissolution of the St. Louis firm, the members other than Sanford were entitled to collect and dispose of all its assets, including the Minnesota 'outfit' and the Minnesota lands, to liquidate its affairs, without the interference of Sanford; that all claim on their part against Sanford individually was relinquished, leaving recourse only to those assets; and that, if there should be any surplus of those assets, after paying the debts of the firm and the advances of any of the other partners therefor, Sanford's executors would be entitled

to his proper proportion of such surplus. No judicial account-
ing has been had on the basis of the rights of the parties as
we have defined them. The bill prays that the defendants
may account touching the affairs and property of the copart-
nership and touching the proceeds of any such property. We
think the plaintiffs are entitled to such an accounting, and
are not barred from it by laches or by the operation of any
statute of limitations."

In the case at bar, the business of Riddle, Coleman & Co.
was finally wound up by the payment of its debts in full, to
do which, as we understand the bill, coupled with the terms
of the deed to the complainants, a public sale was had with
the consent of the creditors, and the complainants purchased
the interest in and the rights and claims against certain compa-
nies and individuals in the South, along the Mississippi River,
including the interest and claims against Whitehill and the
late firm of J. M. Whitehill & Co. This was within four
years after Whitehill had disposed of the enumerated assets,
and made the lease of the coaling privilege, and within three
years after the payment of the outstanding indebtedness,
according to the amendment. Certainly Whitehill ought not
to be allowed to complain that he was permitted to take his
time in selling the stock of the concern to the best advantage;
and it is clear, as the case stands at present, that the statute
did not run as against the trust in the real estate conveyed to
him or to J. M. Whitehill & Co., and purchased with the
money of the firm.

*The decree is reversed and the cause remanded with directions
to allow the complainants to amend their bill, and for fur-
ther proceedings in conformity with this opinion.*