## MIGUEL LLANERAS Y QUINTANA ET AL.

*v.*

## LA COMPAÑIA FERREA DEL OESTE ET AL.

---

San Juan, Equity, No. 313.

1. Equity will not relieve one guilty of gross delay.
2. It is an established rule with courts of equity, independent of any stat-ute of limitations, that they will not entertain stale demands.

Opinion filed June 1, 1907.

---

*Rafael Lopez Landron, Esq., Chas. Hartzell, Esq.,* and *M. Rodriguez Serra, Esq.,* solicitors for plaintiffs.

*T. D. Mott, Jr., Esq.,* and *F. L. Cornwell, Esq.,* solicitors for defendants.

RODEY, Judge, delivered the following opinion:

This is a bill in equity by the complainants, five in number, by name, and others characterized as the succession or heirs of Feliciano Carbia and of one Feliu, whoever the latter may be, not appearing, against several respondents, the first being a rail-road corporation and the other three individuals. The bill is a

Llaneras y Quintana v. La Compañia Ferrea del Oeste.

long and prosy one, consisting of twenty-two pages of type-written matter.

The issue before us is raised by a demurrer which sets out twenty-two different reasons why the cause of action should not be sustained. Extensive oral arguments were made by counsel for the respective parties, and lengthy briefs, written arguments, and memoranda of authorities thereafter filed, to all of which we have given careful examination and attention. The exhibits that accompany the bill are few, but lengthy.

The alleged cause of action, as set forth in the bill and dilated upon in the oral and written arguments and briefs, exhibits a peculiar and somewhat astonishing condition of things between the parties. Complainants allege that they file their bill as stockholders and creditors of the respondent corporation, La Compañia Ferrea del Oeste, not only in behalf of themselves, but also on account of all other stockholders and creditors of the said corporation who may be similarly situated and desire to join them. They allege that the capital stock of the respondent corporation is fixed by its articles or charter at the sum of $100,000, consisting of 100 shares of the par value of $1,000 each. That complainant Miguel Llaneras y Quintana is the owner of one share, upon which he has paid the sum of $600, still owing a balance of $400 thereon, and that he represents another share, which belonged to his brother and the latter's heirs, including himself, which is fully paid. Complainant Manuel Diaz Caneja is alleged to own one share of the capital stock, fully paid, and that he paid the sum of $200 on a second share, leaving $800 due thereon. Complainant Carmen Aguilar, who is the widow and heir of one Agustin Feliu y Casañas, together with several other complainants, as children and heirs of said Agustin Feliu, are alleged to be the owners of two

shares of said capital stock. Complainant Pedro Bolivar y Alvarez, as the liquidator of the firm of Comas, Cornnill, & Co., is said to be the owner of one share of said capital stock; and it is alleged that the succession of Feliciano Carbia is the owner of two shares. In all, complainants allege themselves to be the owners of nine shares, seven of which are fully paid for, balances still remaining due upon the other two.

It is averred that they never in fact received any certificates of stock, but only got receipts for the same, showing the payment of the subscriptions.

In order to shorten the story set up by the allegations of the bill we make the following

## Statement.

It appears that about twenty-seven years ago, on the 2d day of May, 1880, and about eighteen years before the American occupation of this island of Porto Rico, the respondent Ramon Valdez, with a number of other persons, held a meeting in the town of Bayamon for the purpose of organizing a transportation company between the said town of Bayamon and the city of San Juan, which would, of course, necessitate the building of a few miles of tramway or railroad from Bayamon north to Cataño on the bay, and the establishing of ferryboats from the latter place across the bay to the city of San Juan. That at said meeting a board of directors was provisionally appointed to attend to the details of the organization, of which the said Valdez was made president. That thereafter, on June 28th of that same year, a meeting of these provisional directors took place at San Juan and the name selected for the proposed corporation was fixed as "La Compañia Ferrea del Oeste." That at said meeting it was resolved, on motion of said Valdez, to

petition the then government for the necessary permission or franchise to construct and maintain said tramway or railway, etc. ; and it was further resolved that the organization of the said company should be properly carried out and a loan be negotiated sufficient to complete the construction and equipment of said railroad and line of ferryboats. That another meeting was had on August 2d of that same year to modify some of the proposed articles of association, and that on September 16th of the same year, at another meting, the said Valdez, as president of this provisional board of directors, reported that more than half of the proposed capital stock had been subscribed, and that the organization should therefore be completed, and that, in accordance therewith, on October 3d thereafter, a general meeting of the subscribers was had, which approved articles and elected a provisional board of directors with said Valdez as president, and at which meeting one José Travieso was elected to execute the articles of incorporation. That on October 17th thereafter, another meeting of the said board of directors was had, which ratified the previous action, and that thereafter on February 13, 1881, the deed of incorporation was procured to be duly executed by the persons who had subscribed for the capital stock, which instrument set forth the name and objects of the corporation, etc., as is usual, and that it should exist for twenty years, etc., etc., all of which was done under and in full compliance with the then-existing laws of Spain in force in Porto Rico. A copy of this instrument is filed as an exhibit.

That after this incorporation of the company, the officers and directors of the same at once proceeded to business, and constructed the line and established the ferryboats, finishing the same and having it accepted by the proper official of the government in August, 1883, but that:

Llaneras y Quintana v. La Compañia Ferrea del Oeste.

Previous to this latter date, and in about March, 1881, the said Valdez applied to the then authorities for a franchise and took it in his own name, reading for a period of seventy years, although the company had resolved to procure a franchise for only twenty years, which concession to him was published in the official gazette of Porto Rico on the 18th day of March of said year.

That the business of this corporation then proceeded up to the year 1887, the same being carried on under the name by which it was organized and by its proper officers. That in the month of November of this latter year (1887), the concern was embarrassed and owed approximately 21,000 pesos, but it is alleged that it had property at that time of an estimated value of 61,000 pesos. The bill alleges that about this time respondent Valdez conceived the idea of becoming the sole owner of the said corporation and its property, and that he was in fact at such time, by purchase and otherwise, one of the largest stockholders, and was in fact at that time one of the largest creditors of the concern.

That thereupon, the company being embarrassed, a meeting of the stockholders was held and a resolution was adopted directing the immediate dissolution and winding up of the affairs of the corporation, the board of directors being appointed to carry the same into effect. That thereupon the said board of directors proceeded to offer the entire property of the concern for sale at public auction, but, no bidders presenting themselves, and it appearing that it would be impossible to procure any purchaser because the franchise stood in the name of respondent Valdez, a further meeting was held on the 26th of February, 1888, whereat a resolution was adopted to sell all the assets and property of said concern to any creditor of the same who would

bind himself to pay all the debts and obligations of the corporation; fifteen days being granted by the resolution for the execution of all contracts necessary to bring the same about, and empowering the board of directors to do so. That immediately thereafter the respondent Valdez, claiming to be the principal creditor, presented a proposition to said board of directors in accordance with said resolution, offering and agreeing to pay the entire indebtedness in consideration of all the property being transferred to him, and that the same was accordingly done, taking effect the 1st of March, 1888; the deed by the directors for the same being executed on the 26th of that month. This deed recited in detail all the proceedings that led up to it. The estimated value of the property thus transferred was 61,209 pesos and 2 centavos, and the amount of indebtedness Valdez agreed to pay therefor was fixed at 21,011 pesos and 24 centavos. The instrument accomplishing this transfer is also filed as an exhibit.

Complainants then allege that they do not know when Valdez ceased to be president of said concern, but on information and belief state that he continued to be president until he had perfected his plans to secure all the property, and only retired to enable himself to make said fraudulent proposition of purchase of the entire assets.

Many lengthy allegations are then made as to the fraudulent influences of the said Valdez in and about the procuring of this transfer and as to the alleged invalidity and illegality of the transfer of the same, and as to his relations to the concern from which he bought. A further allegation is made that when the said Valdez attempted to register the deed of the property he thus acquired, the same could not be done because there was nothing theretofore in the records which showed that the grantor owned anything, as the charter was in the name of Valdez alone.

Llaneras y Quintana v. La Compañia Ferrea del Oeste.

An allegation is then made that immediately after and ever since the said deed of transfer of all the property of the concern to him, the respondent Valdez assumed and took the exclusive possession of the said railroad or tramway and line of ferryboats and all its property, assets, and accounts, and has ever since continued the operation thereof between San Juan and Baya-mon, claiming and assuming to be the sole and only proprietor and owner thereof; and that the same has produced great profits and large income, amounting to many thousands of dollars annually since that time; and that in fact the said original corporation has never been dissolved or liquidated, but is still in existence, and is still the owner of all of said property. That he has made no report of any kind to the stock-holders of the company of his doings in the premises, or of the earnings from said property since said year 1888; and that no officers thereof have since been elected. A further allegation is made that since said time various stockholders have attempted, through the courts and otherwise, to secure an accounting in the premises from him, but that in all of these cases he has either settled with them or silenced them in some other way, such as by purchasing their stock, etc.

Complainants also allege, upon information and belief, that said Valdez has never made any liquidation of the affairs or in-debtedness of the corporation, and never made any report of his acts or doings to anyone in that behalf, and that they do not know whether he ever in fact paid any indebtedness; and they allege that if he paid any it was very little on that account, and that in fact the whole thing was a fraud on the rights of the creditors and stockholders of the company, and in violation of the code of commerce and other laws, including the royal

III. Porto Rico—6.

Llaneras y Quintana v. La Compañia' Ferrea del Oeste.

decree under which the company was incorporated. They further allege that the getting of the franchise in his own name and for a longer period than he was authorized to do was a fraud upon the corporation, and that it is equitably still the property thereof.

Then comes an allegation that after the American occupation, and on the 4th day of February, 1901, the said Valdez, recognizing, as it is claimed, that he had no title to said assets and property, went before a notary in said Bayamon and executed an instrument alleging himself to be the original owner of the concession from the government for the construction and operation of said line of railway, etc., and declaring that the same was constructed and operated by himself under said franchise, and declaring himself to be the sole and absolute owner thereof with all its appurtenances. That this instrument was wholly false and fraudulent, and that he procured the same to be registered in the proper registry office; and they file a copy of it as an exhibit with the bill. Then follows the prayer, which is an elaborate one, asking the court to set all these doings aside, calling for an accounting, a discovery, and general relief as to the allegations of the bill.

Respondents contend that the bill as a whole sets out no equity. That it wholly fails to comply with the requirements of equity rule No. 94, governing practice in courts of equity of the United States, in that it does not show that these complainant stockholders tried to get the relief they are here praying for, within the corporation itself, etc., etc.; or that they have done any of the other several things required to be done by that rule before they can maintain this bill; and that the action is barred if ever complainants had any action, by §§ 1856-58-63-65 of the Civil code of Porto Rico; and further, that it

Llaneras y Quintana v. La Compañia Ferrea del Oeste.

appears from the face of the bill that complainants have been guilty of the grossest laches. For which reason their action, if any they ever had, is barred; that the bill is multifarious; and that they do not come into court offering to do equity, because they do not tender the balance due on their shares; that the bill does not allege that the defendant corporation has now any legal existence since the American occupation; that it fails to give the names of the members composing the succession of Carbia and others, etc. Then follow many statements as to the prolixity, immateriality, and impertinence of other allegations of the bill, and averments as to the surplusage of other statements therein.

In the view we take of this case, it is unnecessary to consider any ground of demurrer save that of laches. We fully agree with the respondents in their statement that complainants, by their own showing, are guilty of the grossest laches and inexcusable delay, and that they therefore cannot invoke the powers of a court of equity in their behalf. Even from the foregoing statement, meagre as it is, the force of this statement can be perceived and a reading of the bill entire but emphasizes it. In fact, counsel for complainants, at the time of the hearing orally and in his brief, appeared to realize the existence of this manifestly gross laches, and therefore most of his effort was an attempt to show that in many of the cases where like delay was held to bar complainants, the courts sustained that contention only after the answer was in and a hearing had. We admit that this is true in some cases, but counsel have not referred us to any cause where respondents were put to the burden of making a defense where laches was so apparent from the face of the bill as is the case here.

"Conscience, good faith, and reasonable diligence alone call

Llaneras y Quintana v. La Compañia Ferrea del Oeste.

into action the powers of a court of equity." McKnight v. Taylor, 1 How. 161, 11 L. ed. 86.

Equity will not relieve one guilty of gross delay, who has lain by until events enabled him to make his election as to completing the contract with certainty of advantage to himself. Hollingsworth v. Fry, 4 Dall. 345, 1 L. ed. 860, Fed. Cas. No. 6,619.

"It is an established rule with courts of equity, independent of any statute of limitations, that they will not entertain stale demands." Hume v. Beale (Crosby v. Beale) 17 Wall. 336, 21 L. ed. 602.

A reading of the opinion of the Supreme Court of the United States in the cases of Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. ed. 328; Speidel v. Henrici, 120 U. S. 377, 30 L. ed. 718, 7 Sup. Ct. Rep. 610; Riddle v. Whitehill, 135 U. S. 621, 34 L. ed. 282, 10 Sup. Ct. Rep. 924; and Patterson v. Hewitt, 195 U. S. 309, 49 L. ed. 214, 25 Sup. Ct. Rep. 35, and their references, will, we think, convince anybody that complainants here have no cause of action.

Let us consider their position for a moment. Shortly after the organization of this company, respondent Valdez got this franchise in his own name. The fact must have been known to them that he so procured the franchise in his own name, because the franchise itself was published in the official gazette here at the time, yet they took no action. They never went to the trouble to even get possession of their certificates of stock. The concern struggled along until 1887, and then what happened? It was indebted, and a stockholders' meeting, at which these complainants presumably were present, tried to sell out the whole concern for its debts. We cannot understand why they could not raise money to pay the debts unless it was because

Llaneras y Quintana v. La Compañia Ferrea del Oeste.

no one would contribute, or people owing on their stock would not pay, or because Valdez had the franchise. That or before was the proper time to correct that mistake or fraud, whichever it was. Yet, instead of doing so, these complainants, if they were then stockholders or entitled to stock, did nothing, but permitted the whole property to be turned over before their very eyes to Valdez, and a deed to be given to him therefor, which was duly recorded, and which deed recited the entire proceedings. Then what happened? Ten long years passed during the Spanish *régime,* and these complainants sat around and did nothing, just watching Valdez, as they say, making large profits and rendering no account of it to the corporation or to anybody else, and all this time openly holding adverse to all the world and claiming to be the sole owner of all the property. Not only this, but after American occupation they still sat around and did nothing for seven more years, and all this time, too, they see Valdez operating the property, spending money on it, improving it, perhaps, and making money out of it, and still do nothing and say nothing. Finally, after sleeping on their alleged rights, with full knowledge of the same, for twenty-four years, and in all probability using this ferry and railroad themselves almost daily, at last, in June, 1905, they suddenly awaken and file this bill. If any inference is to be drawn from this recent action, we submit that a reasonable one is, that they now simply desire Valdez to do as to them what they allege he has done as to others; that is, to silence them by buying them out. The court will not be a party to such a transaction, and will not, at this late day, lend its power in their aid, or force the respondents to make defense on such a state of facts. If these things are true now, they were true when they happened. There is no telling how much inconvenience or embarrassment might be brought

about now, owing to loss of evidence and by deaths, etc., in the quarter of a century that has passed, if an answer should be called for. Complainants give no excuse, much less a sufficient one, for their action.

The demurrer will therefore be sustained, the bill dismissed with costs, and it is so ordered.