[No. 7124–3–III.   Division Three.   February 19, 1987.]

Phillip P. Skok, *as Administrator, Appellant,* v.
Billie Louise Snyder, *Respondent.*

*Pamela K. Madson,* for appellant.

*Dannette F. Watson,* for respondent.

McINTURFF, C.J.—The personal representative of the estate of Thomas Holland appeals the summary judgment dismissing his action for a partnership accounting against Billie Snyder. The Superior Court determined that the 6–year statute of limitation for actions on written agreements had run. RCW 4.16.040. We reverse, because the partnership property was held in an express trust, which is not subject to the operation of the statute of limitation until it is terminated or repudiated by the trustee. *Rogich v. Dressel,* 45 Wn.2d 829, 841, 278 P.2d 367 (1954); *O'Steen v. Estate of Wineberg,* 30 Wn. App. 923, 931, 640 P.2d 28 (1982).

In September 1963, while residing in Nevada, Floyd and Billie Snyder and Thomas and Emily Holland formed a partnership and purchased a half section (320 acres) of undeveloped land in Stevens County. (For purposes of the summary judgment, the court assumed the existence of the partnership, which Mrs. Snyder otherwise disputed.) In 1964, the Hollands and the Snyders each took separate title to 120 acres of the land. A trust agreement signed the same day evidenced that the Snyders held title to an undivided one–half interest in the remaining 80 acres for the benefit of Thomas Holland, Sr., and Thomas Holland, Jr. The trust further provided:

> That in the event of the death of Thomas Edward Holland before the death of Thomas Edward Holland, Jr., they [the Snyders] will forthwith and without demand convey one–half of the said premises to Thomas Edward Holland, Jr.

In 1968, the Snyders moved to Stevens County. Emily Hol-

land died in 1968. Thomas Holland then married LaFaun Holland. He died in 1970. LaFaun died in 1976.

During the probate of the estate of LaFaun Holland in Nevada, the attorney representing her estate discovered that Thomas Holland's estate was still open. He testified:

> I think it was the basic position of all the heirs . . . that the partnership with regard to . . . [this] acreage always existed. . . .
>
> . . .
>
> . . . The only question in my mind was what was left?

In reviewing documents found in the Holland residence, the attorney discovered the partnership agreement and, subsequently, contacted the Snyders in late 1978 by telephone. He states Mr. Snyder told him he was holding 19 lots for Mr. Holland's estate. Mr. Snyder died soon thereafter, and Billie Snyder successfully petitioned the Stevens County Superior Court to award her the remaining lots in lieu of a homestead.

Following the assertion of Mrs. Snyder's adverse interest, the Holland heirs uncovered the trust agreement and several receipts from Floyd Snyder for moneys paid and received by Thomas. In November 1981, Thomas Holland Sr.'s estate brought an action against Mrs. Snyder. In March 1982, the estate amended its complaint to ask for a partnership accounting. Mrs. Snyder answered, alleging the statute of limitation as an affirmative defense. She then successfully moved for a summary judgment.

The Superior Court relied upon RCW 25.04.430, which provides: "The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners . . . at the date of dissolution . . ." *See also Porter v. Brice,* 31 Wn.2d 1, 8, 194 P.2d 958 (1948). However, the fact that the partnership property here was held by the Snyders pursuant to an express trust distinguishes this action from other actions for a partnership accounting following dissolution.

█ An express trust is not subject to the statute of limitation until it is terminated or repudiated by the trustee.

*Rogich v. Dressel, supra* at 841; *O'Steen v. Estate of Wineberg, supra* at 931. An early Washington case explains this rule:

> [I]n the case of a technical, or, in other words, direct, express, continuing trust, . . . the general rule is that the statute of limitations does not run between trustee and *cestui que trust* as long as the trust subsists, for the possession of the trustee is the possession of the *cestui que trust,* and the trustee holds according to his title.

*Hotchkin v. McNaught–Collins Imp. Co.,* 102 Wash. 161, 166–67, 172 P. 864 (1918). Without such a rule, the mere existence of a trust for a given number of years would constitute a bar to the enforcement of that trust by the beneficiary. *Peterson v. Teodosio,* 34 Ohio St. 2d 161, 297 N.E.2d 113, 118 (1973).

The rule also applies to partnership property held under a trust. In *Riddle v. Whitehill,* 135 U.S. 621, 632, 34 L. Ed. 282, 10 S. Ct 924, 927 (1890), the Supreme Court held that a trust was created by a partnership agreement which provided that upon dissolution the remaining partner should "wind up their affairs and sell the stock to the best advantage for all parties concerned." Hence, the court concluded the statute of limitation would not bar an action for an accounting of partnership assets until the trust created by the agreement was repudiated by the remaining partner. *Riddle.* Similarly, in *Roach v. Caraffa,* 85 Cal. 436, 25 P. 22, 24 (1890), the court held an action for an accounting by the administrator of a deceased partner was not subject to the statute of limitation. The court relied on facts which showed the defendant held the property at issue under a resulting trust for the deceased partner. *Roach.* More recently, in *Peterson,* 297 N.E.2d at 118–20, the court recognized the general rule that the statute of limitation does not operate against express trusts until repudiation by the trustee, but refused to characterize the relationship of partners, without more, as one which amounts to an express trust.

Here, we have something more than a partnership—we

have a written document under which the Snyders acted as trustees with respect to described real property on behalf of Thomas Holland and Thomas Holland, Jr., as beneficiaries. Thus, the crucial question is whether the Snyders repudiated the trust or the trust otherwise terminated so as to start the statute of limitation running.

In order to set the statute of limitation in motion against a beneficiary, a trustee's repudiation of an express trust "must be plain, strong, and unequivocal". *O'Steen,* at 932; *Hotchkin.* The repudiation may be by words or by other conduct by which the trustee denies the trust and claims the property as his own, but such action must be open and, to be effective, must be brought home to the beneficiary. *O'Steen,* at 932 (citing G. Bogert, *Trusts and Trustees* § 951 (2d ed. 1962)).[1] *See also* Annot., *What Constitutes Sufficient Repudiation of Express Trust by Trustee To Cause Statute of Limitations To Run,* 54 A.L.R.2d 13, 23 (1957). There is no diligence required of a cestui que trust until there is a repudiation of the trust. *Davies v. Metropolitan Life Ins. Co.,* 189 Wash. 138, 143, 63 P.2d 529 (1937).

Mrs. Snyder argues she and her husband repudiated the trust as early as 1970 by selling lots without forwarding the proceeds, as they had in the past. However, there is no evidence that the beneficiaries knew of the later sales or had any reason to suspect the Snyders were wrongfully withholding funds. Indeed, the evidence is that as late as 1978, Mr. Snyder indicated to an attorney that he was holding the property for the benefit of Thomas Holland's estate.

---

[1] In *O'Steen,* the plaintiffs alleged that William Wineberg had held some valuable shares in a petroleum company as the trustee of an oral trust created in 1958 under which they were the beneficiaries. When Mr. Wineberg died in 1975, the plaintiffs filed a claim in his estate. The court held that the following facts did *not* prove Mr. Wineberg had repudiated the trust: (1) He took the shares in his own name; (2) he inventoried the shares as community property in his wife's estate after her death in 1962; (3) the plaintiffs concealed their loss of a note signed by him which referred to the trust agreement because they feared he would not honor the trust if he knew the note was missing; and (4) the plaintiffs knew by 1967 that the other investors had received their stock in 1959.

"[A] trustee's continued or subsequent recognition or acknowledgment of the trust is generally regarded as showing or strongly indicating that he had not repudiated it up to the time of such recognition or acknowledgment." Annot., 54 A.L.R.2d at 39 (citing *Meck v. Behrens,* 141 Wash. 676, 683–84, 252 P. 91, 50 A.L.R. 207 (1927)).

We note the trust document here provided that on the elder Thomas' death, the Snyders were to transfer the undivided one–half interest to Thomas, Jr., without demand. The record contains no evidence that the Snyders complied with his provision. But a trustee's nonfeasance does not constitute repudiation. Annot., 54 A.L.R.2d at 168. This annotation cites *England v. Winslow,* 196 Cal. 260, 272, 237 P. 542 (1925), which states:

> To permit this trustee . . . to assert successfully that his mere failure or neglect to perform his duty to account for and turn over the moneys of the estate in his possession . . . rendered his trust wrongful so as to set in motion the statute of limitations in his favor would . . . have the effect of imperiling every other express or voluntarily assumed trust . . . by the mere failure of an erring or neglectful trustee to perform his duty . . .

*See also Welsh v. Griffin,* 179 Cal. App. 2d 207, 3 Cal. Rptr. 729, 735 (1960). Similarly, the Snyders' failure under former RCW 11.64.002[2] to account to Mr. Holland's estate for the partnership assets did not amount to a repudiation.

On the record here, the first act that can be characterized as repudiatory conduct, as described in *O'Steen,* is Mrs. Snyder's request in the probate of her husband's estate in 1979 that the court award her the remaining lots in lieu of a homestead. Mr. Holland's estate filed its action 2 years

---

[2]Former RCW 11.64.002 reads:

"Within thirty days after the death of a partner the surviving partner or partners *shall* file a verified inventory of the assets of the partnership in the superior court in which letters testamentary or of administration are issued on the estate of the decedent, or, if no letters are issued, in the court of the county of which the decedent was resident at the time of his death." (Italics ours.) *Cf.* present RCW 11.64.002, which states the surviving partner or partners shall furnish an inventory upon "written request from the personal representative."

later, well within the statutory time period. Accordingly, we hold it was error for the Superior Court to hold as a matter of law that the statute of limitation barred the estate's action for accounting.

■ Notwithstanding, Mrs. Snyder contends the doctrine of laches applies and the claim should be dismissed. We disagree. In *Keyes v. Tacoma,* 12 Wn.2d 54, 57, 120 P.2d 533 (1941), the court observed:

> In order to bar a recovery because of laches, there must appear, in addition to the lapse of time, some circumstances from which the defendant, or some other person, may be prejudiced, or there must be such lapse of time that it may be reasonably supposed that such prejudice will occur if recovery is allowed.

(Citations omitted.) Restatement (Second) of Trusts § 219(2), at 511–12 (1959) discusses laches as applied to trusts:

> The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust.

*See also* comment *g* to the same section, at page 513; *Akin v. Warner,* 318 Mass. 669, 63 N.E.2d 566, 570 (1945).

Here, Mr. Snyder affirmed the existence of the trust as late as 1978. In these circumstances, the estate's action, which was filed in November 1981, was not barred by laches.

---

[3]Mrs. Snyder asks us to impose attorney fees and sanctions upon the estate. She maintains the estate violated RAP 9.1 and 10.3(a)(4) by citing to her deposition, which was not part of the appellate record. In addition, she contends the appeal is frivolous and the court should award her attorney fees as damages pursuant to RAP 18.9.

The estate's citation to Mrs. Snyder's deposition was in support of a statement that she chose not to dispute for purposes of the motion for summary judgment. For this reason, we hold that sanctions would be inappropriate. Nor do we view the estate's appeal as frivolous, as evidenced by our reversal of the judgment.

The judgment of the Superior Court is reversed.[3]

GREEN and MUNSON, JJ., concur.