# HENRY W. GRAY, Respondent, *v.* GEORGE T. GREEN, Appellant.

*Partnership — discontinuance of general business — an accounting postponed by mutual consent — when the statute of limitations begins to run.*

The complaint, in an action brought in 1884 by one partner to dissolve the copartnership and for an accounting, alleged the formation, on January 1, 1870, of a copartnership between the plaintiff Henry W. Gray and the defendant George T. Green, as stock-brokers, etc., under the name of H. W. Gray & Co.; that, on July 1, 1884, certain partnership transactions were unsettled, and could not have been settled before that date; that the defendant was indebted to the partnership in an amount which could not be ascertained without an accounting.

It demanded, as relief, that the partnership be dissolved, an account be taken, and that the defendant be ordered to pay the amount found due.

It appeared, upon the trial of the action, that after an alleged dissolution, which the defendant claimed had taken place October 21, 1872, the partnership had been continued for the purposes of carrying securities for customers until August, 1873; that both partners had acted as liquidators of the affairs of the firm; that the defendant, in 1875, made affidavits in support of a claim by the firm against the United States, and that, in July, 1884, he authorized a foreclosure action upon a mortgage owned by the firm; that prior to this action, brought in August, 1884, neither party had objected to the other's action as liquidator, or had requested a settlement, and that the assets of the firm could not have been sooner collected.

The principal defense interposed was the six year and ten year statutes of limitations.

Upon an appeal from a judgment in favor of the plaintiff:

*Held,* that the defense was untenable.

That, whether or not, the statute of limitations was a defense to such an action for an accounting between partners must depend upon the particular facts of each case.

That the effect of the evidence and of the pleadings was to establish the fact that a final accounting had, by mutual consent, been postponed until the defendant could receive credit for his share of all collections, and until his net indebtedness could be ascertained.

That the cause of action for an accounting did not arise until July, 1884, the time when the partnership transactions could be wound up.

Where parties are proceeding amicably to wind up a partnership business without judicial intervention, the firm continues to exist for the purpose of collecting, settling up and distributing its assets and performing its antecedent engagements.

Appeal by the defendant George T. Green from a judgment of the Supreme Court, entered in the office of the clerk of the county

of New York on the 2d day of May, 1892, upon a recovery by the plaintiff for $8,124.84 and costs, after a trial by the court at the New York Special Term.

The action was brought in August, 1884, for an accounting between partners. The complaint alleged that the plaintiff and defendant formed a partnership on January 1, 1870, under the name of H. W. Gray & Co.; that the plaintiff's share of the profits was four-fifths and that of the defendant one-fifth. It stated the value of the outstanding transactions, which were not settled until July 1, 1884, at $15,000. The defendant plead the six year and ten year statutes of limitations.

*Charles C. Suydam*, for the appellant.

*J. E. Burrill* and *George Zabriskie*, for the respondent.

BARRETT, J.:

I confess that when this case was before us on the last appeal (25 N. Y. St. Rep., 622), I had grave doubts upon the facts as they then appeared with regard to the question of the statute of limitations; and I concurred in the affirmance of the judgment, only because I felt bound by the opinion delivered upon the first appeal. (41 Hun, 524.) It was, therefore, with but little surprise that I observed the reversal of the judgment in the Court of Appeals. (125 N. Y., 203), and upon perusing the opinion of that court, I noted that the reversal was upon the very point which had seemed to me to be the difficult one in the plaintiff's case as it was then presented.

I make these observations the more freely because, upon the record as it now comes up, my previous doubts are removed, and I feel satisfied that, *upon the facts as found* by the learned judge upon the trial now under review, his conclusion that the statute had not run against the plaintiff's claim is entirely correct.

The key-note of the case, as it was presented to us and to the Court of Appeals on the previous hearing, was that by the agreement of dissolution the plaintiff was made the liquidating partner; that by this agreement he became the authorized agent of the partnership; that as such it was his duty to collect and realize its assets; that the claim against the defendant was an asset, and that, consequently, it

became the plaintiff's duty to the creditors as well as to himself to collect it. The cause of action to reduce this asset to possession was held to be independent of the right to an adjustment of partnership affairs, as between the partners themselves, even though an accounting to ascertain the precise amount of the asset, namely, the specific sum due to the partnership, might well be involved in the liquidator's action.

The cause of action for a judicial dissolution and adjustment of partnership affairs, as between the partners themselves, and for a final accounting with an appropriate money judgment thereon, may indeed accrue upon dissolution, but whether it does or not, must necessarily depend upon the facts of each particular case. The right of the liquidator, however, to proceed against one — be he partner or ordinary debtor — who is liable to the firm accrues immediately upon dissolution. This latter liability of the defendant was treated as in the nature of an overdraft for which he was liable, without regard to the general right to an accounting. In fact, it was thought that the accounting could more properly be had after the restoration to the firm and to its depleted capital of the amount of this overdraft. This is clear from the language of the opinion:

"Granting," said FINCH, J., "that the defendant's interest in profits could equitably reduce his overdraft, and that the amount of profits, and so, his interest in them, would be affected by the total of debts and the soundness of assets, and yet his overdraft remained due *instanter* to the partnership, which he was liable at once to pay, which he ought at once to pay; which the liquidating partner, as such, was entitled immediately to realize and receive."

The fundamental error upon the trial then under review was the finding of fact with respect to the agreement of dissolution and the appointment thereby of plaintiff as sole liquidator. This error was the result of some loose and inaccurate expressions on the part of the plaintiff — when he was previously examined — to the effect that, by agreement with his partner, he was to liquidate the business of the firm. The finding which followed his testimony was not inconsistent with the frame-work of the complaint, and it was, therefore, fatal to a recovery. It is also true that the present finding of fact — that there was no agreement with regard to liquidation — is entirely consistent, as we shall presently see, with both the letter

and the scope of the complaint. And such finding is the truth of the case.

This finding of fact — that there was no agreement by which either partner was to be sole liquidator to the exclusion of the other — is amply supported by the testimony. Indeed, the evidence on the subject was all one way. The plaintiff on the present trial testified *to facts*, that is, *to what actually transpired*, and not, as upon the previous trial, to mistaken conclusions or impressions. He testified that there was no agreement by which he was to have exclusive liquidation of the business; none that he was to liquidate to the defendant's exclusion; none that the defendant was to liquidate to his exclusion; and that, as matter of fact, they both went on, " each of them, liquidating the business." And this was the literal truth, whatever the plaintiff may have inadvertently said upon any other occasion. It is borne out by the subsequent acts of the parties and by facts as to which there could be no dispute. Even the defendant claimed nothing more than a " tacit understanding " that the plaintiff was to be the liquidator; an understanding, however, which was directly opposed to his own acts. For we find him, too, liquidating — drawing money from the bank, paying debts therewith, signing checks " H. W. Gray & Co., in liquidation " as late as September, 1874, authorizing a foreclosure suit in July, 1884, and making affidavits in support of a claim against the government in May, 1873, and July, 1875. The defendant testified that the assets " were liquidated to a certain extent " by him " in settlement of the affairs of H. W. Gray & Co. ; " and on being asked how these assets were liquidated, he replied, " *by sale of the securities.*" He also testified that he drew a great many checks on the account of the firm on the Bank of New York " *for the liquidation of the business of H. W. Gray & Co.,*" although he denies that he drew such checks as late as September, 1874.

It is claimed that all this occurred while the plaintiff was absent in Europe, and was necessitated by such absence, but it clearly appears that several of the specified acts were done while the plaintiff was here ; and as to the others, the defendant acted freely, and without apparent regard to any contract limitation upon his right.

The finding of fact, therefore, to which we have referred, was in precise accord with the evidence on both sides, and it is conclusive of the main question. For if such finding be just as consistent with

the averments of the complaint as was the opposite finding made on the previous trial, then, plainly, the cause of action is not that of a liquidator seeking to compel payment of a sum due to the firm, but an ordinary action between partners — partners who, without question or disagreement, have been severally liquidating the affairs of the firm, and who have completed such liquidation — for a final adjustment of accounts, as between themselves.

Let us analyze the complaint and see precisely what it contemplates. In the first place, it contains no averment that the plaintiff was to be the liquidator of the firm's business. There is, in fact, no averment at all upon the subject of liquidation. Nor is there even a distinct averment of *dissolution*, although that may be implied from the language used. In the first paragraph the partnership is set forth, and its terms are specified. This is admitted in the answer. In the second paragraph, it is averred that, prior to the commencement of the action, *and on or about the 1st day of July*, 1884, there remained, outstanding and unadjusted, certain copartnership transactions connected with the firm; that said transactions have never been settled or wound up, and *could not be until on or about the date last mentioned;* and that said transactions involve assets of the copartnership to the amount of $15,000, of which no account had been taken or had.

Here, it will be observed, a distinct issue is tendered as to the possibility of settling or winding up the copartnership transactions prior to the 1st day of July, 1884. How is this issue met? We have searched the defendant's answer in vain, for a denial. He does not even deny the allegation that the copartnership transactions were outstanding and unadjusted on the 1st day of July, 1884. The answer on this head reads as follows :

" VII. And further answering, this defendant denies that any of the copartnership transactions *which belong to the said copartnership of H. W. Gray & Co.* were outstanding and unadjusted on or about the 1st day of July, 1884, but he says that *if there were any* such transactions outstanding and unadjusted, they were and are the property of the plaintiff herein, and became his sole and separate property on or about the 21st day of October, 1872, when the said partnership was dissolved."

This is really no denial at all. It is but a supplement to the allegation contained in the sixth paragraph of the answer, " That upon the dissolution of the said firm, as aforesaid, in October, 1872, the whole of the assets thereof became and was the property of the said H. W. Gray, as representing the capital he had contributed to the said copartnership."

The allegation of the complaint is that, on the 1st day of July, 1884, "there remained, outstanding and unadjusted, certain copartnership transactions connected with said firm." The denial is that any of the copartnership transactions *which belonged to the copartnership of H. W. Gray & Co.* were outstanding and unadjusted at that time; in other words, they were outstanding and unadjusted, but they did not belong to the copartnership because they became the sole and separate property of the plaintiff when the partnership was dissolved. Thus there is no specific denial of what is alleged, but rather an evasion of the averment. Words are imported into the averment for the purpose of denying it, as thus modified. The effect is an admission of the fact averred, coupled with an affirmative allegation that whatever copartnership transactions remained unadjusted on the 1st day of July, 1884, belonged to the plaintiff, and not to H. W. Gray & Co.

But as to the averment that these copartnership transactions have never been settled or wound up, *and could not be until on or about July* 1, 1884, there is not even a qualified denial.

The only reference to this crucial averment which we find in the entire answer, is at the close of the eleventh paragraph thereof, in these words: "And he says that there were no accounts and transactions of the said firm outstanding after the said date (October 21, 1872), which would prevent such an accounting as the plaintiff demands in his complaint herein."

This is simply an averment of a conclusion of law. It is not a denial, general or specific, of the averment of the complaint. Nor is it a statement of new matter constituting a defense. The effect of the pleading, therefore, is that it amounts to a plea of the statute of limitations as against the admitted averments of the complaint, namely, the averments that copartnership transactions, of which no account had ever been taken or had, remained outstanding and unadjusted on the 1st day of July, 1884, and *could not have been*

*settled or wound up prior to that date;* in other words, that the statute ran against an accounting *notwithstanding the impossibility of completing the liquidation prior to the specified date.*

Thus the defendant meets the issue of fact tendered by the complaint, in substance, by the tender of an issue of law. And that issue necessarily amounts to this: That the statute ran from the date of dissolution, *under any and all circumstances, and without regard to the special facts pleaded, admitted, proved and found.*

This is an extreme view, to which no countenance is given by the Court of Appeals, and it is in direct opposition to the great weight of authority. (*Gray* v. *Green,* 125 N. Y., 205, opinion of Finch, J., see paragraph quoted by the learned judge at Special Term; *

---

Note.— The following is the opinion of Mr. Justice O'Brien:

O'Brien, J.   This action, commenced in August, 1884, is brought for the pur- of settling the affairs of the copartnership of H. W. Gray & Co., composed of the plaintiff and defendant.   The agreement of partnership, which was verbal, commenced on the 1st day of January, 1870, and terminated on the 21st day of October, 1872, by mutual consent.   The agreement of dissolution was verbal.   At the dissolution the partnership owed $215,016.44.   Of these, the larger debts had been paid prior to August 5, 1874, but some small items which, for lack of funds, remained unpaid, were assumed by plaintiff.

The uncollected assets consisted of claims amounting to about thirty-four thousand five hundred dollars, and in addition a claim against the United States, which was not collected until August, 1875.

Another, the Dauchy claim, was not collected until December, 1887, and some others being worthless have never been collected.

At the dissolution there was $501.84 in cash in bank, which was subsequently drawn out by defendant by checks signed "H. W. Gray & Co., in liquidation," and used to pay debts.

It is conceded that a proper adjustment of the accounts of the copartnership will show that defendant is indebted to plaintiff in a considerable sum.

The sole defense relied upon, and the sole question presented for consideration, s the statute of limitations.

There have been two trials before referees, two appeals to the General Term (41 Hun, 524; 53 Hun, 637), and one appeal to the Court of Appeals (125 N. Y., 203).

On this last appeal the Court of Appeals reversed the judgment below in favor of plaintiff, and held, upon the case then under review, that the cause of action was barred by the statute of limitations, and ordered a new trial.

It remains, then, to determine, on this third trial, whether any different facts appear from those upon which the former adjudication was reached.

It appears to me that there are two facts now conclusively established which completely change the aspect of this case as it was presented to the Court of Appeals.   These facts are, first, that when the firm was dissolved there was no

*Riddle* v. *Whitehill*, 135 U. S., 637; and see, also, cases cited in American and English Encyclopædias of Law, vol. 17, p. 1283, note " 3 "; Wood on Limitations, § 210, p. 430; Lindley on Part., vol. 2, p. 964 [Ewell's Am. ed.], and cases cited in the opinion delivered at Special Term.)

We now come to the third averment of the complaint. Here the plaintiff avers, in substance, that the defendant has received more money from the partnership funds and assets than belonged to him; that is, more than his proper share of such partnership funds and assets. The facts thus pleaded in the second and third paragraphs are followed in the fourth paragrah by an averment that " no final adjustment of the business of said firm, or accounting *between said parties as said partners*, has been had." This averment is not denied. Instead of a denial, we find an affirmative statement that " the business and affairs of the said partnership were settled and adjusted at the time of the dissolution thereof by the transfer of all the assets thereof to the plaintiff herein, to wit, at or about the 21st day of October, 1872." A statement, we may say, which was concededly inaccurate.

Here the defendant does not, as in the instance already discussed, import the affirmative statement into the plaintiff's averment, and then deny the latter as modified. He completely ignores the latter averment and plants himself upon the alleged transfer as furnishing a sufficient reason why the final adjustment has not been had.

---

agreement as to who should be the liquidator; and, second, there was no disagreement between the parties as to their respective rights and interests, or as to the mode and manner of liquidation.

It seems that, upon the previous trial, the plaintiff testified that at the time of the dissolution it was agreed that he was to liquidate the business. He now says that there was no express agreement upon the subject, and that there was no agreement of any kind that the defendant should not participate in the liquidation.

The defendant says that there was "a tacit understanding" that the plaintiff was to be the liquidator, but he does not assert that there was such an agreement. Indeed, he could not well have made that assertion, for it appears, without dispute, that he dealt with money which was in the bank at the time of the dissolution, as a liquidating partner might, and further, that he paid a part, at least, of the debts due by the firm out of this very money.

It is quite evident that the plaintiff, upon the former trial, meant to testify to his understanding of the situation rather than to any actual agreement, written or verbal, between himself and the defendant. Undoubtedly the plaintiff, being more deeply interested than the defendant, felt that he was principally concerned

The prayer for such final adjustment and accounting and for a judicial dissolution follows. This complaint, because of the averments contained in the third paragraph, was treated upon the last appeal as sufficient to sustain the supposed liquidator's cause of action. If the defendant had become possessed of and retained assets of the partnership in excess of his partnership interest, *as averred in this third paragraph,* the liquidator had a right, and indeed it was his duty, to collect it immediately upon dissolution. But now that the theory of a special liquidator is eliminated from the case, this third averment becomes an aid merely to the other averments of the complaint and amounts to nothing more than a general statement — that, upon the final adjustment and accounting prayed for, the balance will be found to be in the plaintiff's favor. What have we, then, in the absence of any agreement on the subject of liquidation, but a cause of action for the final adjustment of the partnership affairs, as between the partners themselves, upon allegations (admitted, proved and found) that the very transactions *which are to be embraced in such final adjustment* remained outstanding until a late period, and could not have been settled or wound up at an earlier period?

We think, therefore, that the cause of action stated in the complaint is in harmony with the findings of fact as now presented, and that certainly the statute did not run against *such a cause* of action at the moment of dissolution.

---

in the liquidation, but it is impossible to find upon the evidence that there was any actual or binding agreement that either party should be the sole liquidator to the exclusion of the other. The criticism is, however, a natural one, that the plaintiff's present attitude results from the circumstance that the Court of Appeals treated the supposed fact of his being the liquidator as fundamental. But that criticism is not borne out by the defendant's testimony, nor by the conceded facts with regard to the liquidation. The fairer criticism is, that the plaintiff, upon the former trial, erred in characterizing what actually transpired, as an agreement. What he then stated was really nothing but a layman's inaccurate conclusion as to the legal effect of his own and his partner's acts. There can be no doubt upon a fair review of all the evidence, that while it may have been expected that the plaintiff would be the most active in the liquidation, and would probably do most of the work, yet there was no agreement (or understanding even) that the defendant should be excluded, or that the plaintiff should have the sole right in the premises. The other fact is equally clear. There was no disagreement between the parties, radical or otherwise, at the time of the dissolution; no demand for the immediate restoration of any sum overdrawn; and indeed it was not until long

The learned judge has also found certain facts which negative the idea of any disagreement between the parties, at the time of the dissolution, or any differences respecting their rights. The fifth finding is as follows:

"*Fifth.* Each of said parties in the settlement and adjustment of the affairs of said copartnership has acted faithfully, and without unnecessary or inexcusable delay; and no complaint has at any time been made by either party of any want of diligence on the part of the other in closing up said affairs, and neither has requested or notified the other to wind up or settle the affairs in any other manner, or in any shorter or other time than was employed in winding up and settling the same, and the assets of said firm could not have been collected or realized sooner than they have been."

This indicates that the liquidation proceeded peaceably and without question, and that there was a "tacit understanding" to postpone the final accounting, upon which the defendant's liability should be ultimately stated and fixed, until he could be credited with the collections made in the due course of such liquidation. That, under these circumstances, the statute did not run at the date of dissolution is abundantly established by the reasoning of the learned judge at Special Term, and we can add nothing to what he has said upon that subject. And this reasoning is sustained not only by what was said by FINCH, J., in the Court of Appeals in this case, but also by the precise language used by Chief Justice FULLER, in the Supreme Court of the United States, in *Riddle* v. *Whitehill* (*supra*).

after the dissolution, when debts had been paid and assets collected, that the plaintiff even asked the defendant for a settlement.

Upon these facts, the opinion of the Court of Appeals is suggestive of an entirely different result from that arrived at upon the theory that the action was brought by a sole liquidator to compel the restoration by a defaulting partner of sums which he had overdrawn and which should be "restored to the firm and to the depleted capital." Upon the facts, as they now appear, it is plain that the statute could not run against the cause of action set forth in the complaint while the parties were peaceably proceeding with the liquidation, from which, when completed, the final result sought could alone be ascertained. Undoubtedly a court of equity, upon the dissolution of a firm, can proceed to wind up its affairs through the instrumentality of a receiver. So, also, a liquidating partner may at once, in case of disagreement, apply for relief in that form. These actions, however, are not *this action*, and the plaintiff is certainly not barred from bringing this action merely because, immediately upon dissolution, he might, had there been a disagreement, have brought another and entirely different action. The present action proceeds upon

There are, however, one or two additional facts disclosed by the record which, we think, fortify this position. It appears that the partnership *was continued* for several purposes after what is styled dissolution. The general business of the firm was undoubtedly terminated, but its subsisting engagements called for and received continuous service. Thus the defendant tells us that when the business terminated the firm was carrying certain securities upon which it was necessary for them to borrow money, and they did so. " Such loans," he testified, " were made in the months of October, November, and December, 1872, and January, February, March, April, May, June, and even in August, 1873." If they had not made these loans from time to time it is apparent that they could not have carried the securities for their customers or for themselves if they, or either of them, were interested in the transactions ; and the continuance of such transactions is consistent with the defendant's testimony *that he believed profits were made after the dissolution.* . But these continuous transactions were not the only ones which, as matter of fact, called for the continuance of the firm. A single illustration will suffice on this head. One of the claims, the realization of which was necessarily postponed, was that against the government for the return of certain taxes. illegally imposed. The learned counsel for the appellant, in an elaborate " note " upon the sixth page of his points, contends that this claim was not a partnership asset at all, but that " it was money which had been charged to the accounts

---

*pre-existing facts with regard to the peaceable liquidation of the affairs of the firm.* The complaint alleges that no final adjustment of the business, as between the partners, has ever been had, and the plaintiff demands such final adjustment, and, as a result, that the defendant pay him the balance which may be found due thereupon. There is not a word in the complaint about winding up the affairs of the firm generally. The court is not asked to appoint a receiver to do this. There is not a suggestion, even, of an unpaid debt. There was nothing for a court of equity to do, under this complaint, except to strike the balance between the parties for which the liquidation out of court had furnished the foundation ; nothing, in fact, save to declare and decree the result of a final accounting, based upon such non-judicial liquidation. What, though either party might, upon the original dissolution, have brought an action to have the affairs of the firm judicially wound up? May they not, nevertheless, wind up their own affairs in their own way, without resorting to a court of equity ? And can it be said that, while they are thus peaceably proceeding, in their own way, to reduce their assets into money and to pay their debts, the statute is day by day running

of customers for whom it had been paid, and to whom, if collected, it rightfully belonged."

The facts are that these customers were, in the main, the parties themselves, and, consequently, the collection was divisible under the partnership arrangement. It is true, however, that a part of the claim rightfully belonged to outside customers, as pointed out by the learned counsel. But what does this establish except that, so far as this part of the claim was concerned, the parties were still partners for the purpose of serving their customers and performing duties which they still assumed, and assumed quite properly?

The learned judge at Special Term has stated with clearness the rule, and has fortified the statement with abundant citation of authority, that where parties are proceeding amicably to wind up the business without judicial intervention, the firm *continues to exist* for the purpose of collecting, settling up and distributing its assets and performing its antecedent engagements. It will be perceived that, in the present case, this general rule is supplemented by the fact that some of these antecedent engagements were continuous, and that the partnership duties *to customers* (apart from the ordinary duties of liquidation) lasted certainly until the 25th of August, 1875, when the claim against the government was realized.

It is suggested that an action for an accounting and settlement might have been brought upon the dissolution of the firm, and that a receiver might have wound up the business and sold such claims

against the final result of this method of liquidation? It is true that a defaulting partner may, by a suit in equity, be required to make good what he has overdrawn, but that can only be accomplished by a decree reserving for future apportionment the uncollected assets in which he is interested, or directing the sale of such assets. The reason of this is that the amount of his indebtedness, no matter what he has drawn out, is dependent upon the amount of his interest in the assets. Now, if the partner who charges such overdrawing, instead of pressing his claim growing out of that circumstance, chooses to await the collection of the assets in the ordinary way, and the ascertainment thereupon of the sum really due him, is it not apparent that his right of action therefor commences when the sum so due *has been thus ascertained*, or at least when it can readily be ascertained, without resort to a winding-up suit and a receiver? And would not this ordinary process of personal liquidation without suit be much fairer to the defaulting partner, in view of the consideration that he is entitled to credit for his share of what the assets produce, and is only liable to his copartner for the balance due after receiving such credit? That balance, in the case of a winding-up suit, could only be ascertained by a receiver's sale of the assets, and thereby

as the defendant admits could not have been realized in due course until long afterwards. Without considering the question discussed by the learned judge at Special Term, as to whether the claim against the United States was saleable under section 1910 of the Code of Civil Procedure, read in connection with section 3477 of the United States Statutes, we need only say that the parties were not bound to sacrifice these contingent and doubtful claims. It was indeed their duty to nurse them and to realize all they could upon them for the benefit of their customers or of their creditors, and they also had a right to do as much for themselves when their customers were settled with. With what propriety, for instance, could either of these parties have rushed into a court of equity while they were carrying the securities already referred to after the dissolution, that is, from that time down to August, 1873? Would it have been a proper performance of duty to leave these securities to the tender care of a receiver and to trust to his borrowing money from time to time, under authority of the court, to save such securities from being sacrificed? And would it not, as against their customers, have been a downright breach of trust to permit a receiver to sell at auction so nebulous a claim, for instance, as that against the government? So, too, as to the claims against Dauchy and Neill. Dauchy gave the firm a mortgage upon land in Connecticut, in which he had a vested remainder, subject to a life estate in his father. And the defendant actually authorized and requested a New York

---

the liability of the derelict partner might be seriously increased. It may be added that, in a case like the present, such liability could not be ascertained even in this manner, for an important asset of the firm, namely, the claim against the government, could not be sold at all. (United States Rev Stat., § 3477.) Such a sale is not only prohibited by this section of the Federal statute, but also by the Code of Civil Procedure. (Code of Civ. Pro., § 1910, sub. 3.) Why, then, may not the parties, instead of seeking to ascertain, by suit, the amount payable by the defaulting partner, leaving in abeyance a claim which cannot possibly be sold, await the collection of such claim in due course, and then settle the final balance upon a proper apportionment of the sum collected? And, if they choose to act upon the latter principle, can it be doubted that the right to a final accounting and to the payment of the final balance due, only ensues *when the collection upon which it is predicated has been made.*

This principle was expressly held by the Supreme Court of the United States in *Riddle* v. *Whitehill* (135 U. S., 637), where Chief Justice FULLER, speaking for the court, observed that: " Where, however, partnership affairs are being wound up in

attorney to employ a Connecticut attorney to foreclose this mort-
gage *as late as July*, 1884. Neill had no immediate assets, but he
had a contingent interest in real estate in this city liable to be defeated
by his death before his mother.

These examples serve to suggest the reason for the rule stated by
FINCH, J., that the right to an accounting and settlement *may accrue*
upon dissolution, and does accrue when "*some material necessity
exists*" therefor, and no other fact or circumstance bars or postpones
the remedy, all of which is another and more illustrative way of
expressing the general principle, which runs through all the cases,
that the statute does not necessarily run immediately upon dissolu-
tion, and that the question whether or not it does run, must be
determined upon the peculiar facts of each case. It is also sug-
gested that even in an action strictly between partners, the receiver
need not sell contingent and doubtful claims, but that these
claims could be reserved and the rights of the parties adjusted upon
such a winding up *as might be presently possible*, making proper
provision, however, for the future division of what might ultimately
be realized upon contingent or doubtful claims. This suggestion,
however, is based upon the former theory of the action. Of course,
when it was found, as a fact, that the plaintiff was suing as a firm
liquidator, and that the defendant owed the firm a specified sum, a
cause of action for that specific sum, or for an accounting to ascer-
tain such sum, was shown. The defendant, upon that theory, was

---

due course, without antagonism between the parties, or cause for judicial interfer-
ence; *where assets are being realized upon and liabilities extinguished, and no settlement
has been made, the cause of action has not accrued and the statute has not begun to run.*"

A more decisive statement of the law upon the facts of the present case, as now
presented, it would be difficult to find. And it is in entire harmony with the
decision of the Court of Appeals based upon the facts presented to that tribunal,
namely, that the plaintiff was, by agreement, the sole liquidator of the firm, and
that there was such antagonism between the parties as called for judicial interfer-
ence. As we have seen there was, in fact, no such agreement and no such antago-
nism. Although the defendant had overdrawn his interest in the firm, the plaint-
iff had no desire to force immediate restoration without regard to the results of
amicable liquidation. He was perfectly willing to wind up the affairs of the firm
"in due course, and without antagonism," and thus, in a fair and reasonable way,
without litigation or forced sales, to ascertain the precise measure of the defend-
ant's liability If the defendant's contention should be sustained, the plaintiff
would be rewarded for his consideration by the loss of his entire claim. Thus an
absolute rule would be laid down that the statute, under any and all circumstances,

bound to pay that specific sum (or whatever sum might be shown upon an accounting to be presently due), without regard to future credits. But, under the present findings, the question is not what he owed the firm, or was bound to make good to the liquidator at the moment of dissolution, *but what, upon a final adjustment, he owed the plaintiff as a partner.* That depended, as the learned judge has found, upon his net indebtedness to the firm, namely, his gross indebtedness according to the books, less his proportionate share of all future collections; and, consequently, his indebtedness to the plaintiff upon a final adjustment could not be ascertained or estimated until the assets had been realized.

The learned judge has found that the defendant was entitled, as against the specific sum which he owed the firm, to be credited with one-fifth of all sums which might thereafter be collected and realized from the assets of the firm. And this finding is not excepted to. Now, what is the force of this finding? The defendant was certainly not entitled to these credits as against a liquidator in a liquidator's action; that is not presently entitled to such credits. He was bound, in such an action, to respond for his gross indebtedness; and for his credits he had to await future collections. If, therefore, he is entitled to such credits in this action, it is because of the character of the action, because, in truth, it is an action not by an authorized agent of the firm to collect an overdraft, but an action by one partner to compel his copartner to pay to him the balance due upon

must run from the date of dissolution against an action to ascertain and decree payment of the sum due by one partner to another upon a final accounting. Such a rule would include even a case where complete liquidation was finally brought about by one partner putting his hand in his pocket and paying off the last claim against the firm. If this latter act were performed ten years after the dissolution, the partner thus paying off the last obligation would still be remediless. It might well be that a contingent liability of the firm could not be ascertained until more than ten years after the dissolution; and the final adjustment of the partnership affairs would be impossible until such contingent liability had been ascertained. On the other hand, it might well be, as in this case, that, owing to the non-assignability of a claim in favor of the firm, a considerable period must elapse before that side of the partnership account could be adjusted, and the balance due from one partner to the other ascertained. Until it becomes possible to so adjust the accounts between the members of the firm as to ascertain precisely how the copartners stand to each other, it would seem to be clear that a cause of action for such final adjustment does not accrue. Any other rule would be hostile to private and friendly adjustment, whereas such measures of adjustment should certainly be

the 1st day of July, 1884, the date specified in the complaint as that upon which, for the first time, the partnership tranactions as between partners, could be adjusted.

In addition to this finding, and in connection therewith, the learned judge has specifically found that — we quote the language — "the amount of defendant's indebtedness to the plaintiff depended upon the amount of his indebtedness to the firm, and could not be ascertained or estimated until the assets of said firm were collected or realized and defendant's account with the firm had been adjusted. *And defendant has claimed to be credited with his share of said assets when collected or realized.*"

This latter finding *is* excepted to, out the evidence in support of it is, as we have seen, overwhelming. The parties acted upon this view of the defendant's rights, and their understanding, as it may be gathered from their acts and methods of liquidation, plainly was that neither party should be precipitate, and that the defendant should have the full benefit of all collections before any final accounting between the parties as partners should be required.

The fact is that there was no difference or disagreement between the parties upon the dissolution. There was nothing to go into a court of equity about. There were, then, no charges or counter-charges. They simply proceeded, each of them, with the liquidation in the manner and upon the principles found by the learned judge at Special Term. The first nominal divergence occurred in 1880 and

encouraged. It would, in fact, be equivalent to a prohibition of private liquidation, or of an arrangement whereby the sum due by one partner to another upon a final accounting should be ascertained amicably and without judicial intervention, at least in any case where the liquidation was likely to be protracted, and it would be in direct opposition to all the authorities.

We have already referred to *Riddle* v. *Whitehill* (135 U. S., 621). The principle there stated is also, in substance, enunciated in *Massey* v. *Tingle* (29 Mo., 437); *Cannon* v. *Copeland* (43 Ala., 201; *Gleason* v. *White* (34 Cal., 258 ; *McClung* v. *Capehart* (24 Minn., 17); *Todd* v. *Rafferty* (3 Stewart [30 N. J. Eq.], 254) and *Bradford* v. *Spyker's Administrator* (32 Ala., 134). The text-books state the same principle. Thus, in Wood on Limitations (§ 210, p. 430), it is said: "The statute does not run between partners so long as the partnership continues, and each partner is in the exercise of his right, *nor necessarily after its dissolution where there are debts due to or from it. There is no definite rule of law that the statute begins to run immediately upon the dissolution of the partnership, and the question as to whether it does or not must depend upon the peculiar circumstances of each case.*"

So, in the opinion of the Court of Appeals in the present case, FINCH, J,, observes

1881, when the plaintiff demanded a settlement. But the real divergence occurred only when the liquidation was completed and the hour for final adjustment, accounting and money judgment thereupon had arrived. It was, then, that the defendant put in his answer in this action and *for the first time* alleged that the business and affairs of the firm had been settled and adjusted, at the date of the dissolution, by the transfer of all the assets thereof to the plaintiff; an allegation, however, which conflicted with his own subsequent testimony and which he has been compelled to abandon.

The learned counsel for the appellant does not dispute that the liquidation was peaceable, nor does he contend that there was any special cause for appealing to the courts, or indeed any cause whatever save the inherent right which he insists always vests *eo instanti* upon dissolution. But he does contend that the precise action could have been brought by the plaintiff at once. It is really difficult to appreciate the force of this contention, and especially difficult to comprehend the meaning of the statement which follows and upon which the contention is founded, namely, that if such an action as the present had been then brought, the allegations of the complaint and the prayer for relief would have been identically the same as they are now.

How could the plaintiff have alleged in October, 1872, that there remained outstanding and unadjusted copartnership transactions on the 1st day of July, 1884, and that these transactions had never been

that "the right to an accounting and settlement *may accrue upon the dissolution and does accrue at least where some material necessity exists and no other fact or circumstance bars or postpones the remedy.*" Such a doctrine, therefore, as the defendant contends for would clearly violate the general principles which govern in actions between partners. It would also overturn the rule that where the parties are proceeding amicably to wind up the business, without judicial intervention the firm *continues to exist* "for the purpose of collecting, settling up and distributing its assets and performing its antecedent enagagements." This was the language of RUGER, Ch. J., in *Kennedy* v. *Porter* (109 N. Y., 552), citing *Griswold* v. *Waddington* (16 Johns., 438); *Hubbard* v. *Matthews* (54 N. Y., 43); *King* v. *Leighton* (100 N. Y., 386). "The partnership," said the Chancellor, in *Griswold* v. *Waddington*, "may be said to continue as to everything that is past, and *until all pre-existing matters are wound up and settled.*" (See, also, Gow on Partnership [3d Am. ed.], 230, 231.)

The partnership may certainly be said to have continued here until the claim against the United States, which no receiver could sell, had been collected by the parties. While the firm thus continued to exist, and while other claims besides

settled or wound up, and could not be until the date last mentioned ?
And how could the plaintiff in October, 1872, as a sequence to this
last allegation, further allege that no final adjustment of the business
or accounting between the "parties, as partners," has been had ?

But, apart from this, the statute did not necessarily run, even
against such a. cause of action as that set forth in this complaint —
omitting these impossible averments — for clearly the parties could
postpone the ordinary remedy for a reasonable time, or until such
remedy, because of some new fact or future circumstance, became
needful.

Our conclusion is that, upon the pleadings, the proofs and the
findings, this case, in its true aspect, comes within the principle to
which we have already adverted, and we think, therefore, that, upon
its own special facts, the statute of limitations did not run at the
time of dissolution, which was the 21st day of October, 1872,
nor certainly between that date and the 5th day of August, 1874,
which latter date preceded the commencement of this action by ten
years.   This conclusion is all that is necessary to sustain this judg-
ment, although we have no doubt, upon all the facts, that the running
of the statute was deferred, at least, during the continuance of the
partnership for partnership purposes.   But, further than this, upon
both principle and authority, the partners could postpone the right
to an accounting, as between themselves, until the business had

---

that against the United States remained outstanding, collections were made, from
time to time, which were applied to the reduction of the defendant's indebtedness.
These collections continued until a late period.   The defendant has had the benefit
of them all, and they enter into the final account which is now to be adjusted
and settled.

The action upon both the pleadings and the proofs is for a *judicial* dissolution
of the partnership — a partnership which may be said, in the language of the
chancellor (*supra*), to have continued pending these collections for a final account-
ing as to all its transactions, *including such collections* and for judgment against
the defendant for whatever sum he may be found indebted to the plaintiff after the
due application of all such collections.   The latter is the substance of the prayer;
all else is incidental or superfluous.

The "facts and the circumstances" which FINCH, J., suggested might postpone
the remedy *are now before the court.*   They may be briefly recapitulated.   One of
such circumstances is, that the plaintiff was not appointed sole and exclusive
liquidator, and consequently his complaint is not that of a *quasi* trustee, whose
duty it may have been forthwith to compel the defaulting partner to restore what

been peaceably liquidated, to the end that all payments and receipts might be embraced in such accounting and it might thus be final. No reasons occur to us for doubting that partners may do this if they please, and that they have done so in a given case may be implied from their acts in proceeding severally with the liquidation without antagonism (each, as here, giving the other assistance from time to time in effecting realizations) and without cause for seeking judicial aid.

We think, therefore, that the real cause of action stated in the complaint, and found by the learned judge upon ample evidence, was a cause of action for a final accounting, *which had, by mutual consent, been postponed* until the defendant could receive credit for his share of all collections, and until his net indebtedness thereon could be ascertained. And this cause of action did not arise until the date specified in the complaint, when the copartnership transactions could finally be wound up, namely, "on or about the 1st day of July, 1884."

For these reasons, as well as for those given by Mr. Justice O'BRIEN, the judgment should therefore, be affirmed, with costs.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.

---

he had overdrawn. His complaint, read in the light of the present proofs, is simply that of one partner seeking, after years of amicable and mutual liquidation, to obtain an appropriate judgment founded upon the result of such amicable liquidation.

Another of such circumstances is, that there were no differences between the parties with regard to the defendant's overdrafts, and that the extent of his liability was plainly left in abeyance to be determined only by the practical results of the amicable liquidation which both parties contemplated.

Still another circumstance is, that the defendant received credits from time to time, as collections were made, which reduced his liability, and several of these credits were within the ten years which preceded the commencement of this action.

And, lastly, the nature of one of the assets was such that it could not possibly have been realized in a winding-up suit, and that the partnership necessarily continued in existence for the purpose, at least, of reducing this claim to possession.

The plea of the statute, as against such an action, is not, upon the facts now before the court, sustained either upon principle or by authority, and the plaintiff should, therefore, have judgment as asked in his proposed findings.