CHARLES S. COLE *vs*. ISAAC C. FOWLER.

Third Judicial District, Bridgeport, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Until the partnership accounts are finally settled no right of action accrues to either partner against the other for advances to the firm.

Certain dealings between partners reviewed and *held* upon the facts to constitute a partnership rather than an individual transaction.

Where it was agreed that a loan by one partner to his associate should be repaid by the avails of certain outstanding accounts due the firm, the aggregate amount of which was supposed, but mistakenly, to equal the loan, the claim of the lender against his partner is an entire and single one and he is not obliged to sue, nor does the statute of limitations run against him, until the outstanding claims have been collected or adjusted so that the amount finally due upon the loan can be accurately ascertained.

[Argued November 4th—decided December 22d, 1896.]

ACTION for an accounting and for the recovery of the amount found due, brought to the Superior Court in Fairfield County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

Cole v. Fowler.

*Morris W. Seymour* and *Howard H. Knapp*, for the appellant (defendant).

The plaintiff's claim was barred by the statute of limitations. *Lathrop* v. *Atwood*, 21 Conn. 116. The fact that neither of the parties knew the exact amount of this advancement until after the dissolution and settlement of their partnership account, on September 15th, 1892, has nothing to do with the case. Ignorance of his rights on the part of the person against whom the statute has run, will not suspend its operation. *Bank* v. *Waterman*, 26 Conn. 330. The burden of showing such a state of facts as would take the case out of the running of the statute, is upon the plaintiff. *Somerville* v. *Hamilton*, 4 Wheat. 230; *Ford* v. *Babcock*, 2 Sandf. 518. The agreement between the plaintiff and defendant did not postpone the time when this advancement made by the new firm to pay the debts of the defendant, should become due, until all the collections had been made, and the precise amount of the debt ascertained. There has been no new promise made in this case. None could have been made, because neither party knew of the existence of the debt. There has been no payment on account, for the same reason.

*V. R. C. Giddings* and *John C. Chamberlain*, for the appellee (plaintiff).

Were this an ordinary action at law, the statute would not have commenced to run until the last payment had been made upon the account of this check, which payment was made less than a year prior to the bringing of this suit. This action, however, being one of account, is not governed by the same rules as would control ordinary litigation between these parties if they had not borne the relation of partners to each other. Here each stands as trustee for the other, and the statute of limitations does not run in favor of either, until the partnership is terminated. *U. S.* v. *Alexandria*, 19 Fed. Rep. 609; *Gleason* v. *White*, 34 Cal. 263; *Jordan* v. *Miller*, 75 Va. 442; *Logan* v. *Dixon*, 73 Wis. 533; *Hindy* v. *March*, 75 Cal. 566; *Holloway* v. *Turner*, 61 Md. 217; *McDonald* v.

*Holmes*, 22 Ore. 212; *Partridge* v. *Wells*, 30 N. J. Eq. 176. If the transaction in question was a partnership transaction, the statute of limitations did not apply to it. Gen. Stats., § 1374. And it is difficult to see how it could be otherwise regarded. The shortage caused by the difference between the amount of this check and the bills receivable, was the shortage of the firm; and the whole transaction was treated from first to last as a partnership arrangement.

FENN, J. On January 15th, 1885, the defendant Issac C. Fowler, who was engaged in the renting business at Bridgeport, Conn., and the plaintiff Cole, who was in his employ, entered into copartnership under the firm name of I. C. Fowler & Co. The agreement was that each partner should have an equal interest in the business; that the firm should succeed to the business of I. C. Fowler, and should continue that business. On and after February 1st, 1885, Fowler was to transfer his firm bank account and his business kept in connection with said business, to the new firm, which was to assume all liabilities arising thereafter, but none of the liabilities of the firm of I. C. Fowler. Cole was to pay, in consideration of the one half interest in the business and good will of I. C. Fowler, $3,000, paying $700 in cash and giving his note for $2,300. The copartnership was formed and the agreement carried out, and the business of I. C. Fowler, after February 1st, 1885, done in the name of I. C. Fowler & Co. Subsequently the firm name was changed by mutual consent to Fowler & Cole. Mr. Cole subsequently paid the said $2,300 note in installments, making the final payment November 13th, 1887. The business of I. C. Fowler, I. C. Fowler & Co., and Fowler & Cole, was the same, and it was this: They acted as agents for owners of property in renting and collecting rents and taking care of the property, charging for their services a commission upon the sums collected. In collecting rents I. C. Fowler, I. C. Fowler & Co. and Fowler & Cole, kept a separate account of the moneys collected and paid out for the respective owners whose property they had in charge. Very often the owners overdrew

their account and Fowler, Fowler & Co., and Fowler & Cole, paid bills of owners, and paid out to owners moneys in excess of rents collected, and within the amount of rents due, and made the same good from rents collected thereafter and due at the time of the advances. At the date of the copartnership these overdrafts by and for owners amounted to $1,955.14. It was supposed by both Fowler and Cole that the overdrafts would be paid into the firm, and the overdrafts were treated as cash. In two or three days after the partnership was formed, their bankers notified Fowler & Cole that the account of I. C. Fowler was overdrawn and must be made good, and Fowler, who had charge of the finances of the firm, came to Cole and said there was a difference between his bank balance and the checks drawn by Fowler individually, amounting to $3,577.75, and that this resulted from advances made by him to the owners, which would subsequently come back into the firm. Thereupon, in order to meet the checks drawn by Fowler individually, and in the expectation and belief that this would be made good as the rents were collected of owners who had overdrawn their accounts, Cole made out a firm check and Fowler signed the firm name thereto, on February 3d, 1885, to the order of I. C. Fowler, which was by him indorsed and deposited with the bankers of Fowler, who were also the bankers of the new firm. These bankers held this check for the account of I. C. Fowler, until the deposits of the new firm were sufficient to meet it, and in the meantime met the checks of Fowler as they were presented, and repaid themselves from the check given by the new firm. At the time Fowler & Co. gave this $3,577.75 check, the overdrafts of the owners of property in their hands amounted to $1,955.14, leaving a balance of $1,622.61, which the firm of Fowler & Co. advanced to pay the checks of Fowler. This amount of $1,622.61 was moneys advanced by the firm of Fowler & Co. to pay private debts of Fowler, upon the representation of Fowler that it would all be returned to the firm when the overdrafts were met. Both Fowler and Cole believed this, and neither knew until after the dissolution of their firm that the overdrafts did not equal the check drawn, by $1,622.61.

The firm was dissolved on September 15th, 1892. It had never made a trial balance during its existence, and neither Fowler nor Cole knew anything of this deficit at this time.

At the dissolution the partners agreed to allow the property owners to select whichever partner they might desire to collect their rents and care for their property, and pay to the other any balance for overdrafts in the accounts of the clients each secured. They footed up these amounts and gave to each other a check for the same. There was nothing further among the assets of the firm, except the office furniture and a small account or two. Cole sold to Fowler his interest in the office furniture. The partners supposed that this practically settled all business relations between them. Many of the accounts for overdrafts which existed on February 1st, 1885, were not balanced and the overdrafts made good, until long after this period, and in some instances nearly down to the time of the dissolution, and in one instance after the dissolution.

After the dissolution the partners found by notice from their bankers, that the checks drawn to meet accounts of owners were in excess of their bank balance; and as these checks came to the bankers, Fowler and Cole each contributed one half of the amount of these checks, viz, $      . Shortly thereafter, Cole investigated the books of the firm and learned for the first time that the overdrafts at the time of the formation of the firm did not equal the check drawn. He thereupon communicated this fact to Fowler, who then learned for the first time of this fact. The method of bookkeeping adopted, the careless manner of doing business, and the failure to even strike a trial balance at any time, were responsible for the ignorance of the partners about this matter. Each partner had full access to the books; each was equally liable for ignorance of this matter, and the mistake was mutual. Upon the trial an accounting was had, and it was agreed by the parties that the amount paid by Fowler & Co. to Fowler, and never repaid, was $1,622.61. The amount due Cole is thus $811, and judgment must be rendered for this amount with interest from March 1st, 1893, unless the same has been barred.

Upon the above facts the Superior Court rendered judgment for the plaintiff, and the defendant appealed, assigning the following reasons: 1. The court erred and mistook the law in deciding that the cause of action in this case was not barred by the statute of limitations, and in deciding that said suit was brought within six years next after the right of action accrued. 2. The court erred and mistook the law in deciding, upon the facts proved and found true, that the plaintiff had not been guilty of *laches* in not enforcing or attempting to enforce his claim, if any he had, long prior to the bringing of this suit.

This action was brought on the 14th day of February, 1895, in the form of a claimed accounting between partners. The defendant, in addition to the plea of the statute of limitations, interposed as an equitable defense the long delay and *laches* of the plaintiff in bringing the suit. This defense was overruled by the Superior Court. But although such action was, as we have seen, assigned as a reason of the appeal to this court, it was not, and could not upon the finding, have been pressed here. The defendant says in the brief, and we agree in the statement: " The sole question to be determined by the court in this case is whether the statute of limitations, § 1371 of our General Statutes, forbids the maintenance of this action."

But in the examination of this question we are led to the consideration of three others, upon the answer to which the determination of this inquiry depends. *First*, is the matter in dispute to be regarded as a partnership transaction or account? *Second*, regarding it as a partnership transaction or account, what application and effect, if any, does the statute of limitations, General Statutes, § 1371 have? *Third*, if treated, not as a partnership but as an individual transaction, does said statute of limitations bar the action?

Considering these inquiries in the order stated, we think the dealing in question may reasonably be regarded as a partnership transaction. The situation was this: A firm had been organized to continue and carry on, apparently in the same way, without jar, break or interruption, the established

business of one of the partners. It did not assume existing liabilities, but it assumed and carried forward a course of dealing with property owners having open, unbalanced running accounts, in which they were credited with moneys collected and charged with money paid out, the latter being in very many instances in excess of the former, to be made good thereafter from rents to be collected thereafter, though due at the time of the advances. It was "supposed" as the finding phrases it—which word we presume is used as equivalent to understood—by both partners that these overdrafts would be paid into the firm, and they were treated as cash. Two or three days after the partnership was formed it appeared that there was a difference between the bank balance of Fowler and the check drawn by him individually, which required to be made good. Fowler stated to Cole, in good faith, that this resulted from advances made by him to the owners, which would subsequently come back into the firm. Thereupon a firm check was made to the order of Fowler, which was used by Fowler for the purpose aforesaid, and met by the subsequent deposits of the firm.

Now the defendant asserts that "this was in no sense a partnership transaction, but an individual transaction between the two partners." We think the reverse is correct. Here was a loan or overpayment, not by one partner to another, but by the firm itself, of funds of the firm, to a partner in it, to be repaid not all or any part of it to an individual, but to the firm. Cole himself apparently was not in condition to lend money to Fowler, or Fowler likely to borrow of Cole individually. Cole then owed Fowler $2,300 for which he had given his note, which he subsequently paid in installments. Neither party could have had any idea that here was any "individual transaction." The real understanding was, in effect, that the business of the firm, as assumed by it, stood obligated to the defendant to the amount of the difference in the bank balance, because such balance represented his advances before receipt, in the said business. Treating, as it is found they did, overdrafts to owners as cash, the check drawn was paid by such cash to the extent to which it

existed in fact. The parties believed there was enough to pay it in full, and it was made to be so paid. The balance which constitutes the present subject of controversy, that is the excess of $3,577.75 over $1,955.14, namely $1,622.61, was paid by deposits of the firm, and when so paid by cash deposits constituted a proper subject-matter to be taken into consideration by the partners at the time of any settlement or adjustment between them of the partnership affairs. It is difficult to see how an independent adjustment of this particular matter could practically have been enforced by any action or compulsory proceeding.

Regarding this matter, then, as a partnership transaction or account, we think the law is well settled to the effect that the statute of limitations would not begin to run against it until after the dissolution of the partnership itself. Until that time the partnership relation precludes the bringing of suits between partners concerning firm transactions, and therefore postpones the accruing of rights of action on such account. In *Mickle* v. *Peet*, 43 Conn. 65, 66, it was held that where one of two partners advanced to the partnership more than the other, he could not maintain an action against the other partner for his proportion of it, not merely while the partnership existed, but also so long as the partnership debts were unpaid. This court said: "Debts due to the partnership remain to be collected, and partnership property remains to be disposed of. Until this is done there can be no final settlement of the partnership accounts." In *Bishop* v. *Bishop*, 54 Conn. 232, it was held that "a payment by a partner on the partnership account in the regular course of the partnership business, cannot be made the ground of a legal claim against his copartner before the partnership accounts are settled." Many authorities to the same effect elsewhere, including *Riddle* v. *Whitehill*, 135 U. S. 621, 639, were cited in the plaintiff's brief, but the law on this subject is too well established to require a more extended consideration. Reference was also made by the plaintiff to General Statutes, § 1374, as in point, and decisive. But we have no occasion to invoke the aid of that statute in order to arrive

at our present conclusion.  We express no opinion concerning its application, it being unnecessary at the present time.

But finally, if the transaction in question could be treated, not as a partnership affair, but as an individual matter between the two partners, still, even in that case we think the record does not support the claim that the right of action accrued more than six years prior to the bringing of the suit and is barred.  Let us look at the transaction as it would appear if viewed in the manner just stated.  The plaintiff loans the defendant one half of $3,577.75, to be repaid by one half of the same sum when collected from owners for whom the plaintiff and defendant were acting, overdrafts to whom were supposed to exist to that amount.  They did not in fact so exist, except to the extent of $1,955.14.  This might have been ascertained by the plaintiff from an inspection of the books and the striking of a trial balance.  Assume that it was the duty of the plaintiff to do this, and that he stands in no more favorable situation in any way than if he had so done and ascertained.  What then?  He could not demand the entire half of $3,577.75, because the half of $1,955.14 was not then due.  So he demands all that he can then claim, half of $1,622.61, and is met by a refusal.  He brings suit.  He can recover no more than said last sum.  He recovers that.  Then it transpired that not all of the $1,955.14 is collectible, or will ever be paid.  There is another amount which will not " subsequently come back " either "into the firm'" or to him individually.  Can he bring another action in court, or must he lose it altogether?  That depends, of course, upon whether his claim is to be treated as an entire and single one, conferring but a single right of action; if so, "the rule is fully established, that an entire claim . . . . cannot be divided and made the subject of several suits; and if several suits be brought for different parts of such a claim, the pendency of the first may be pleaded in abatement of the others, and a judgment upon the merits *in either* will be available as a bar in the other suits."  *Secor* v. *Sturgis*, 16 N. Y. 548, 554.

We think that, treating this as an individual transaction,

it constitutes only a single claim for the excess over and above what is met by the overdrafts, which sum could not be ascertained until the overdrafts were paid or found uncollectible; that until the time when this was ascertained, the plaintiff could only bring his action by assuming to treat the entire amount of outstanding overdrafts as credits, and this he was under no obligation to do on penalty if he did not the statute of limitations, as beginning to run from the very date of the transaction, could be successfully invoked against him. *Pinney* v. *Barnes*, 17 Conn. 420; *Marlborough* v. *Sisson et al.*, 31 id. 332; *Burritt* v. *Belfy*, 47 id. 323. The statute does not begin to run until the cause of action is complete. *Bank of Hartford County* v. *Waterman*, 26 Conn. 324, 331. Of course the plaintiff could not defer the running of the statute by his own *laches*. *Gay's Appeal from Probate*, 61 Conn. 445, 451. But the facts before us do not justify the claim that the present plaintiff has sought, or is seeking to do so.

There is no error.

In this opinion the other judges concurred.