[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 3, 1995, the plaintiff, Alan D. Froehlich, filed an action (Froehlich II) to foreclose a judgment lien obtained against the defendant, Marcia J. Froehlich, in a prior civil action (Froehlich I). The defendant has filed an answer with three special defenses, a setoff and a counterclaim. The plaintiff filed an answer and special defenses to the defendant's counterclaim. The special defenses alleged that the counterclaim was barred by res judicata.
The plaintiff then filed a motion for summary judgment on the defendant's counterclaim and setoff. The defendant did not file any opposition thereto. On November 17, 1995, the court granted summary judgment as to liability only, and on November 30, 1995, upon agreement of the parties, the court set aside the summary judgment. The defendant subsequently filed an affidavit and a memorandum of law in opposition to the plaintiff's motion for summary judgment.
The plaintiff argues that the counterclaim is barred by res judicata because the claims asserted therein were previously decided in Froehlich I. The defendant counters with two arguments. First, that the judgment underlying the lien is void because it was rendered by a court that lacked subject matter CT Page 3427-I jurisdiction. Second, that the claims alleged in the present action Froehlich II, were never actually or necessarily decided in Froehlich I.
A factual and procedural background of Froehlich I is necessary to explain why the court had subject matter jurisdiction in Froehlich I, and why the counterclaim inFroehlich II is barred by res judicata. On August 6, 1991, the plaintiff filed a civil suit against Marcia Froehlich (FroehlichI), for breach of a partnership agreement. The complaint alleged CT Page 3428 the following. The plaintiff and defendant entered into a partnership agreement to purchase, restore and resell real estate. The agreement provided that each partner would be responsible for one-half of all the partnership's expenses. The defendant breached the agreement by failing to make additional capital contributions necessary to cover partnership expenses. The complaint demanded reimbursement for one-half of the amount of capital contributions made by the plaintiff in excess of those made by the defendant.
The defendant filed an answer with special defenses and a two-count counterclaim. The special defenses asserted that: (1) the plaintiff breached his fiduciary duty to the partnership and to the defendant; (2) the plaintiff breached the partnership agreement; and (3) the plaintiff was estopped from seeking relief from the defendant. The first count of the defendant's counterclaim sought a $5,000 setoff for labor and materials that the defendant supplied to the partnership. The second count alleged that the plaintiff breached his fiduciary duty to the defendant and to the partnership in that the plaintiff:
 (a) failed and refused to keep the defendant reasonably informed as to the income and expenses of the partnership property;
 (b) failed and refused to permit the defendant to participate the management and conduct of the partnership business;
 (c) deviated from the partnership business without the consent of the defendant;
 (d) refused the defendant access to the partnership books despite demand in violation of General Statutes § 34-57.
Pursuant to the counterclaim, the defendant demanded a decree dissolving the partnership (pursuant to Sec. 34-70 of the General Statutes) and money damages. The parties agreed to have the matter heard before attorney trial referee, Thomas W. Beecher. On September 23, 1993, the trial referee filed a report recommending judgment for the plaintiff on the complaint and both counts of the counterclaim.
The trial referee's report was replete with factual findings. CT Page 3429 The parties agreed that the plaintiff would be responsible for the "business" affairs of the partnership, and the defendant would be responsible for renovating the property. (TRR, p. 3.) At all relevant times, the plaintiff was a real estate agent. (TRR, p. 3.) The defendant was, at least for part of the time, the principal of a corporation that renovated buildings. (TRR, p. 3.) The plaintiff contributed $23,500 in cash to the partnership. (TRR, p. 4.) The defendant contributed $111,376 in cash to the partnership. (TRR, 4.)
In May of 1987, after approximately nine (9) months of remodeling work, the property was placed on the market at an asking price of $410,000. (TRR, p. 4.) The plaintiff authorized the following price reductions:
Listing Price Date
 $395,000 June, 1987 395,000 August, 1987 375,000 September, 1987 359,900 September, 1987 349,900 November, 1987 339,900 March, 1988 329,900 April, 1988 319,900 June, 1988 299,900 March, 1989 294,900 May, 1989 279,900 November, 1989 279,000 March, 1990
The defendant was aware of a number of these price reductions. (TRR, pp. 4-6.)
In early 1991, the plaintiff changed the real estate listing from a "sale only" to a "lease only" listing. (TRR, p. 5.) The plaintiff testified that at the time of the hearing, the property was worth approximately $225,000.00; a value significantly below the partnership's investment. (TRR, p. 5.)
In 1988, with the consent of both parties, the property was leased to a carpenter for $1,000 per month. (TRR, p. 5.) The carpenter was responsible for finishing work and maintaining the property. (TRR, p. 5). The property was leased again from July 1, 1991 through September of 1992 for a monthly rent of $1,400. (TRR, p. 5.) Thereafter, the property was leased for a monthly CT Page 3430 rent of $1,300. (TRR, p. 6.)
The trial referee found that there was no substantial evidence that the plaintiff demanded income tax or accounting information prior to the commencement of the suit. (TRR, p. 6). There was no evidence that either party had attempted to exercise their rights under the "Dissenting Remedy" clause of the Partnership Agreement.[1] (TRR, pp. 6-7.) There was no substantial evidence that the plaintiff spent partnership funds on anything other than partnership expenses or acted beyond the scope of the partnership agreement. (TRR, p. 7.) There was evidence that the defendant did not contribute capital "forthwith" to cover partnership "losses" as required by the partnership agreement. (TRR, p. 7.) The plaintiff covered the shortfall between expenses and income with his capital contributions. (TRR, p. 7.) There was also clear and satisfactory evidence that the plaintiff did not breach his fiduciary duties to the defendant or to the partnership. (TRR, p. 7.) There was no substantial evidence that would require the court to order an accounting (pursuant to Sec. 34-60) or a dissolution (pursuant to Sec. 34-70). (TRR, p. 7.) There was no evidence that the partnership could "only" operate at a loss. (TRR, p. 8.)
The trial referee also determined that the defendant was not entitled to a setoff of $5,000 because the debt was owed to a corporate entity which was not a party to the action. (TRR, p. 8.) The court also determined that the defendant was not estopped from asserting his claim. (TRR, p. 9.) On March 24, 1994 the court, Moraghan J., overruled the defendant's objections to the trial referee's report and granted the plaintiff's motion for judgment. On April 27, 1994, because the judgment was unsatisfied, the plaintiff filed a judgment lien in the Office of Town Clerk in New Fairfield, Connecticut. The present actionFroehlich II, seeks to foreclose the judgment lien arising out ofFroehlich I.
The defendant argues that the judgment in Froehlich I is void because the court lacked subject matter jurisdiction to render judgment. A judgment rendered without subject matter jurisdiction is "void ab initio and is subject to both direct and collateral attack." Broaca v. Broaca, 181 Conn. 463, 467. "[J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial court or here. . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." Mannweiler v.CT Page 3431LaFlamme, 232 Conn. 27, 35. "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." (Alterations in original.) Gurliacci v.Mayer, 218 Conn. 531, 545. Consequently, this court must decide, as a threshold issue, whether the court in Froehlich I had subject matter jurisdiction to render judgment.
"Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." (Citations omitted; internal quotation marks omitted.) Tolly v. Department of Human Resources,225 Conn. 13, 29. "A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. Such jurisdiction relates to the court's competency to exercise power, and not to the regularity of the court's exercise of that power." (Citations omitted; internal quotation marks omitted.) Plasil v. Tableman, 223 Conn. 68, 80.
The defendant maintains that the court lacked subject matter jurisdiction in Froehlich I because the affairs of the partnership were not settled at the time judgment was entered. The defendant relies upon the common law rule that a partner cannot maintain a suit at law against a copartner unless there has been an accounting or settlement of the partnership affairs. See Cole v. Fowler, 68 Conn. 450, 457; Bishop v. Bishop,54 Conn. 232, 234; Mickle v. Peet, 43 Conn. 65, 66; Dewit v. Sanford,
1 Root 270; 59A Am.Jur.2d, Partnership § 542; 68 C.J.S. Partnership, § 108. The defendant asserts that the absence of a partnership accounting, prior to the initiation of suit inFroehlich I, constitutes a jurisdictional defect that deprived the court of subject matter jurisdiction in Froehlich I.
Several Connecticut Superior Court cases have found exceptions to the common law rule that requires an accounting prior to the filing of an action at law between co-partners. InMazzella v. Lathouris, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 109337 (July 26, 1991, Ryan, J., 6 CSCR 747) the court was faced with a factual scenario similar to that alleged in Froehlich I. In Mazzella, the plaintiff and the defendant were partners in a business that purchased, renovated and resold real estate. The parties agreed to share equally in the partnership profits and losses. As the partnership began losing money, the defendant refused to pay his share of the partnership debts. The plaintiff filed an eleven-count complaint alleging and/or seeking breach of the partnership CT Page 3432 agreement, contribution, indemnification, unjust enrichment, accounting, breach of fiduciary duty, fraud, conversion, breach of contract and quantum meruit. The defendant moved to strike most of the counts on the ground that the plaintiff had failed to plead an accounting or settlement of the partnership affairs; citing 59A Am.Jur.2d, Partnership § 542 at 513. The plaintiff argued that the Uniform Partnership Act, Sec. 34-39 of the General Statutes abrogates the common law rule requiring an accounting. The court adopted an exception to the common law rule and held that an action for an accounting (an equitable action) can be brought in the same suit as an action for breach of fiduciary duty (action at law) and denied the defendant's motion to strike.
The reasoning and authority cited in Mazzella was adopted inRothstein v. Rosenblit, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 543126 (April 24, 1995, Wagner, J., 14 CLR 234). In Rothstein, the plaintiff and defendant were copartners who owned a multi-family housing development. The plaintiff brought an action against the defendant alleging breach of fiduciary duty and breach of the partnership agreement. The complaint demanded indemnification and an accounting. The defendant moved to strike the complaint based on the common law rule that requires an accounting prior to filing an action at law against a copartner. Judge Wagner cited the "thoroughly researched opinion" in Mazzella, adopted its reasoning, and denied the defendant's motion to strike the plaintiff's complaint.
The court found another exception to the common law rule inCanton West Associates v. Miller, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 385861 (August 30, 1995, Slattery, J., 15 CLR 246). In Canton WestAssociates, the plaintiffs and the defendant formed a partnership to purchase, renovate and resell real estate. The parties entered into a partnership agreement requiring each partner to contribute additional capital in the same proportion as each party's initial contribution. The defendant refused to pay his share and the plaintiffs brought an action for contribution. The court citedMazzella, Rothstein and numerous out-of-state decisions and held that an accounting is not a precondition to a partner suing another partner where the complaint does not involve a "complex or multifarious partnership transaction." "The issue of the amount owed by the defendant by reason of his failure to pay his share of capital contribution being readily determined, the CT Page 3433 requirement of an accounting serves no purpose and this court finds it unnecessary."
These Superior Court cases comport with numerous foreign decisions that either modify or abrogate the common law rule. SeeAgrawal v. Razgitis, 539 N.Y.S.2d 496 (1989) (modified); Hux v.Woodcock, 474 N.E.2d 958 (Ill.App. 5 Dist. 1985) (modified);Hanes v. Giambrone, 471 N.E.2d 801 (Ohio App. 1984) (modified);Kartalis v. Lakeland Plaza Joint Venture, 784 S.W.2d 64
(Tex.App. 1989) (modified); Dupuis v. Becnel Co., 535 So.2d 375 (La. 1988) (abrogated); Sertich v. Moorman, 783 P.2d 1199 (Az. 1989) (abrogated).
Applying these principles to the facts alleged in FroehlichI, the court holds that the plaintiff was not required to plead that an accounting or settlement had occurred prior to initiating suit. The allegations in the plaintiff's complaint did not involve the complexity of a partnership relationship. The demand for contribution arose out of a provision in the partnership agreement which required equal capital contributions from each partner. In addition, the amount demanded was easily determined so that requiring an accounting, prior to initiating suit, would serve no purpose.
Moreover, the defendant has failed to cite any legal authority to support her position that the applicability of the common law rule would deprive a court of subject matter jurisdiction. All of the cases cited by the defendant involve a motion to strike or a demurrer challenging the legal sufficiency of the pleading. None of the cases that apply the common law rule hold that the failure to plead an accounting deprives the court of subject matter jurisdiction. The court (attorney trial referee) maintained subject matter jurisdiction to render judgment in Froehlich I.
"[A]ny party may move for summary judgment upon any counterclaim . . . as if it were an independent action." (Internal quotation marks omitted.) Miller v. Bourgoin, 28 Conn. App. 491,500, cert. denied, 223 Conn. 927, citing Sec. 379 of the Practice Book. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202, citing Sec. 384 of the Practice CT Page 3434 Book. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500. "Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata."Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 712.
"[T]he terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion, respectively. Both claim preclusion and issue preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. Claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Alterations in original; citations omitted; internal quotation marks omitted.) Jackson v. R.G. Whipple, Inc., supra, 712-13.
Claim preclusion prevents a party from pursuing "any claims relating to the cause of action which were actually made or might have been made." (Internal quotation marks omitted.) Scalzo v.Danbury, 224 Conn. 124, 128. "The doctrine of res judicata, or claim preclusion, provides that a former judgment may serve as an absolute bar to a subsequent action involving claims relating to such cause of action which were actually made or which might have been made." Polverari v. Sugar Hollow Park, Inc., Superior Court, Judicial District of Danbury, Docket No. 312233 (June 16, 1993, Moraghan, J.).
The plaintiff moves for summary judgment on the defendant's counterclaim because "there is no genuine issue as to any material fact because the defendant's counterclaim and setoff are barred by res judicata and collateral estoppel." The defendant counters that his demand for an accounting in the present action was not determined in Froehlich I. The defendant argues that the trial referee determined that there was no substantial evidence, in 1991, to require the court to order an accounting pursuant to Sec. 34-60. The defendant argues that circumstances occurred, after judgment was rendered in Froehlich I, that require the court to order an accounting in Froehlich II.
CT Page 3435
The defendant's counterclaim incorporates the allegations set forth in the setoff[2] and alleges the following facts. The parties formed a partnership for the purpose of purchasing, remodeling and reselling real estate. The plaintiff breached the partnership agreement by taking the property off the market and by leasing the property rather than promoting its sale. The plaintiff has failed to provide an accounting despite the defendant's demand for one. The plaintiff has retained partnership assets in his own name. The plaintiff has appropriated partnership assets for his personal use.
The defendant has also submitted an affidavit in opposition to the plaintiff's motion for summary judgment on the counterclaim. The affidavit states that in 1992 the defendant "terminated the partnership by causing a notice to be sent to Alan Froehlich's attention to that effect." (Defendant's Affidavit in Opposition to Motion for Summary Judgment, par. 17.)
The defendant's statement for relief demanded seeks an accounting of the plaintiff[3] pursuant to Secs. 34-60 and 52-401-405 of the General Statutes, a judicial settlement of the partnership accounts, and money damages. The claims asserted in the defendant's counterclaim are barred by res judicata. The counterclaim asserts a claim for breach of fiduciary duty based upon allegations that the plaintiff failed to market the property for resale, refused to provide an accounting of partnership assets, and misappropriated partnership assets. Each of these claims was decided by the trial referee in Froehlich I.
The defendant's claim for breach of fiduciary duty, based upon allegations that the plaintiff failed to market the property for resale, was raised in Froehlich I in the first special defense, paragraph 1, subsection D. (Plaintiff's Exhibit A.) The trial referee made extensive factual findings regarding reductions in the subject property's list price and found that the defendant was aware of some of the price reductions. The trial referee also determined that there was no substantial evidence that the plaintiff breached his fiduciary duty to the defendant or to the partnership.
The defendant's claim for breach of fiduciary duty, based upon allegations that the plaintiff refused to provide the defendant with an accounting, was raised in the Froehlich I
counterclaim, paragraph 2, subsection D. (Plaintiff's Exhibit A.) The trial referee made a specific factual finding that there was CT Page 3436 no evidence that the defendant demanded an accounting prior to initiating Froehlich I and that there was no substantial evidence which would require the court to order an accounting pursuant to Sec. 34-60.
Finally, the defendant's claim that the plaintiff breached his fiduciary duty, by misappropriating partnership funds, was also raised by the pleadings in Froehlich I.[4] (Plaintiff's Exhibit A.) The trial referee made a specific finding of fact that there was no substantial evidence that the plaintiff spent partnership funds on anything other than partnership expenses. The trial referee also determined that the plaintiff did not breach his fiduciary duties to the defendant or to the partnership. The claims set forth on the defendant's counterclaim were fully and fairly litigated in Froehlich I and are barred by res judicata.
There is no merit to the defendant's argument that she is entitled to an accounting at the present time, even though the court found no evidence to order an accounting in Froehlich I.
The allegations in the counterclaim concern the plaintiff's actions as a partner and the partnership was dissolved in 1992 before judgment was entered in Froehlich I in 1994. (Defendant's Affidavit in Opposition to Motion for Summary Judgment, par. 17.) As a result, the defendant's argument must fail.
The judgment underlying the judgment lien is not void for lack of subject matter jurisdiction, and the defendant's counterclaim is barred by res judicata. The motion for summary judgment on the defendant's counterclaim is, accordingly, granted.
Moraghan, J.